LIZZIE J. MESSENGER, Appellant, *vs.* EZRA G. MESSENGER, Respondent.

1. *Divorce—Desertion—Failure of husband to provide place of residence.*—The wife is bound to follow the fortunes of her husband, and live where he chooses to live and in the style and manner which he may adopt; and where a husband sues for a divorce on the ground of desertion, based on the fact that his wife remained away from him and refused his request that she should come and live with him, it is no defense, that at the time of such request he had no house to take her to, and that she was comfortably situated where she was.

2. *Divorce—Desertion—Offer to return—Must be made in good faith.*—Where suit is brought for divorce upon the ground of desertion, an offer made by defendant to live with plaintiff is not sufficient to contradict the charge of desertion, unless made in good faith for the purpose expressed, and not as a device to defeat plaintiff's action.

3. *Divorce—Infants—Care and custody.*—A divorce was granted to the father and against the mother of young female children; the mother was entirely able and competent to take care of them, and bring them up, and educate them; *Held*, that although the law generally gives the father the care of such children, they should properly be left with the mother with a view to the best interests of the children. *Ordered*, that the mother should have the care and custody of the children until the further orders of the court.

### *Appeal from St. Louis Circuit Court.*

*P. E. Bland,* with whom were *T. A. & H. M. Post,* for Appellant.

I. In Jan. 1868, the defendant had taken the plaintiff to the house of Mr. Bliss at Nokomis, Ill., and that had become their home. On the 28th of Jan., of that year, he willfully and intentionally deserted her there. Her friends, the Blisses, gave her there a home, comfort, sympathy and assistance. She was then *enciente,* and they assured her not only of a home, but of their assistance and protection during the trying period of her coming perils of child bearing.

Defendant was then, and continued to be, for months afterwards, destitute of means and had no home or shelter provided for her or her children. He, very shortly after leaving her, sent her requests for her to go to him, but had no means of affording her home or support, and had no home himself.

Under these circumstances, and until he provided a home to take her to and a support for her, her declining to go to him

was not without reasonable cause, nor desertion on her part. She was justified by the circumstances. (Gillenwaters vs. Gillenwaters, 28 Mo., 60; Powell vs. Powell, 29 Vt., 148–150; Bishop vs. Bishop, 6 Casey, 412; Gleason vs. Gleason, 4 Wis., 64; Hardenburg vs. Hardenburg, 14 Cal., 656; Molony vs. Molony, 2 Adams, 249.)

He remained destitute of a home and means during all of his requests for her to go to him until shortly before his renewal of these requests here in October, 1869. Hence the same rule of justification operated up to that time. Her absenting herself being justified by the circumstances—being with reasonable cause up to October, 1869, and thereafter by consent up to February or March, 1870, and there being no delinquency on her part at that time—then even if she were in the wrong from that time to her offer of Nov. 26th, 1870, no cause of action had at the date of such offer accrued to him, because such absenting was for a period less than one year.

II. No cause of action having accrued to the defendant at the time of her offer to go to him, what was the effect of that offer, his rejection of it and sending her word that he would not live with her again, followed by an invitation from him for her to go to him?

If the offer was made in good faith, his refusal to receive her constituted desertion from that date in him—that is an absenting "without her consent and without reasonable cause" and continuing for a year—a cause of action accrued to her. (1 Bush., § 786; Fellows vs. Fellows, 31 Maine, 342; English vs. English, 6 Grant (U. S., Ch.), 580; McGalvey vs. Williams, 12 John., 295; McCutcheon v. McGalvey, 11 John., 281; Hanberry vs. Hanberry, 29 Ala., 719.)

The offer was made in good faith. The legal presumption *prima facie* is of good faith—bad faith is never presumed. The presumption of good faith is consistent with all the facts and circumstances, viz:

(*a.*) His former destitution and present change in that respect.

(*b.*) The contest by *habeas corpus* over the children and its threatened renewal.

(*c.*) Her previous efforts and her sending the offer by a mutual friend.

(*d.*) His reply, conclusive and rendering any further offers hopeless.

(*e.*) Lastly and conclusively, the *bona fides* is established by the positive and direct testimony of the only witness speaking to the point (Mrs. Messenger)—without a shadow of conflict or contradiction or the least attempt to impeach.

III. The plaintiff being entitled to a decree of divorce, the custody of the children should also be adjudged to her on account of her fitness as relating to the comfort and lasting well being of the children, they being little girls of tender age, as to material welfare and as to moral welfare and culture.

*Lee & Adams, with whom were Davis & Smith,* for Respondent.

I. Appellant claims, that her letter of November, 26, 1870, was such an offer to return to respondent and live with him as his wife, and his not receiving her was such an absenting of himself, as gives her a cause for divorce.

Appellant's said claim is to be determined by the answer of the two following questions :

(*a.*) Was the letter of Nov. 26th, 1870, written by appellant in good faith for the purposes expressed in it ?

(*b.*) Or had the respondent, by the conduct of the appellant, acquired the right to divorce as against her, prior to Nov. 26, 1870 ?

A negative answer to the first proposition or an affirmative answer to the second, will either of them be a bar to a decree in her favor? (1 Bishop on Marriage and Divorce, § 810, 32 Cal., 467.)

II. The letter of Nov. 26th, 1870, was not written in good faith.

Her constant refusal for two years and nine months prior to Nov. 26th, 1870, to live with respondent, as appears by the testimony ; the pendency during the year 1870 of proceedings

under the Habeas Corpus Act concerning the children of the parties; the fact that the controversy between the parties had been for a long time prior to Nov. 26th, 1870, in the hands of attorneys, and in general, the bitterness of the controversy between the parties as appears from all the testimony, show conclusively, that the letter of Nov. 26th, 1870, could not express the sincere wishes of appellant. At least, respondent, considering all of these things, could well have treated that letter as he did, as a trick to lay the basis for a divorce on the part of appellant. The subsequent acts of appellant clearly show such to have been her intention. There was no renewal or pressure of her pretended offer, and no further attempt made by her, but, true to her theory, as soon as the statutory time had elapsed, she filed her petition for a divorce based on the letter of Nov. 26, 1870.

III. The respondent, by the conduct of the appellant, had acquired a right of divorce against her long prior to Nov. 26, 1870.

The appellant concedes the absenting of herself, but claims that the same was not without reasonable cause, and in justification thereof undertakes to make it appear, that respondent was at no time prior to Nov. 26, 1870, able to take care of her properly.

It is not true, that respondent was unable to take care of plaintiff; but admitting for the sake of the argument, that such was the fact, yet such does not constitute " reasonable cause" for her to absent herself. "Reasonable cause" is that, and only that, which would entitle the party so separating him or herself to a divorce. (Butler vs. Butler, [Leading case in Pa.,] 8th Law Journal, 389 ; Id. page 397; Eshback vs. Eshback, 23 Pa., 343; Bishop on Marriage & D. 1st Vol., § 799 ; Logan vs. Logan, 2 B. Mon., 142, see p. 147; Gray vs. Gray, 15 Ala., 786.)

Respondent's right of divorce, therefore, had fully accrued to him prior to Nov. 26th, 1870, to-wit : in February, 1869, and he is now entitled to a decree.

The evidence shows only overtures and negotiations looking towards a condonation, which do not bar respondent's right to a divorce. (2 Bishop on M. & Divorce, § 47; Quarles vs. Quarles, 19 Ala., 363; Perkins vs. Perkins, 6 Mass., 69; 2 Bishop on M. & Divorce, §§ 53-62.)

Condonation is conditional, the original offense is revived if the condition (of good behavior) is violated. (2 Bishop, § 53; Armstrong vs. Armstrong, 27 Ind., 186.) There can be no condonation of desertion. When the delinquent returns, the desertion is ended, it is not condonation. The respondent is therefore fully entitled to a decree of divorce.

IV. The respondent is also entitled to a decree for the custody of the two minor children. There is not a jot of evidence affecting respondent's character. He is sober, temperate and industrious, of excellent moral character. He is, both by the statute and at common law, entitled to the custody of these children. (Wagn. Stat., § 2, Ch. 66; Mercein vs. People, 25 Wend., 64; People vs. People, 19 Wend., 16; People vs. Chegary, 18 Wend., 637; Sumner vs. Lebec, 3 Greenl., 223; Commonwealth vs. Nutt, 1 Browne [Pa.], 143; Allen vs. Caster, 1 Beas., 202; Wellesley vs. Wellesley, 2 Bligh. U. S., 124; Whitefield vs. Hales, 12 Ves. 492 and note to Sumner's Edition; and there is nothing in the evidence preserved in the bill which should alter the rule of the Common Law.) This is not a case for any exercise of discretion, as nothing appears to change the general rule as to custody.

NAPTON, Judge, delivered the opinion of the court.

This is a suit for a divorce, instituted in February, 1872, by the wife against the husband, on the grounds of desertion, without a reasonable cause, for the space of one year, and of such cruel and barbarous treatment, on the part of her husband, as to endanger her life; and, for the further cause, that the defendant had offered such indignities to her as rendered her condition intolerable.

The defendant denied all the allegations of the petition, and, asserting that his wife had deserted him, asks for a divorce on this ground.

The circuit court refused to grant either party a divorce, and the judgment is appealed from by both parties.

In regard to the charge of cruelty and indignities made in the petition, nothing has been said in the argument here, it being conceded that the evidence does not sustain either of these charges, and the only ground relied on by the plaintiff or defendant is the alleged desertion.

The facts in regard to the question seem to be very clear and scarcely disputable. The marriage took place in this city in 1865, the plaintiff having previously been a teacher in the public schools for several years, and the defendant being then engaged in business in New Orleans, apparently a prosperous one, yielding him an income of $8,000 a year. Immediately after the marriage, the parties to it, together with the mother of the plaintiff, who was without means, and dependent on her daughter for support, went to New Orleans, and there continued to live until 1868, about which time the defendant failed in business and became a bankrupt. In the meantime, one child, a daughter, had been born, and the mother of the plaintiff had been furnished by the defendant with the means of making a visit to St. Louis, but had returned about the time of the birth of her daughter's first-born. It seems from the evidence of both plaintiff and defendant, that during the residence in New Orleans there was some disturbance of that mutual confidence which the marital relation assumes, and which is seldom, if ever, destroyed, where it is based upon a mutual attachment. It is unnecessary to state the details of these controversies as they have no bearing upon the question of desertion. They merely show, that at the time of their leaving New Orleans, their domestic happiness was not without alloy.

In 1868, after the bankruptcy of the defendant, the plaintiff and defendant went to Illinois on a visit to the house of a friend of the wife, a Mr. Bliss, whose wife was an old acquaintance and friend of Mrs. Messenger, and who was thought to have it in his power to give the defendant, Messenger, some aid in procuring him a means of support. Mr. Bliss

did propose to give Messenger a farm in the neighborhood, of which he had control, but accompanied his offer with a proviso that Messenger should treat his wife more kindly than he had done. Messenger, the defendant, declined the proposal, and came down to St. Louis to seek employment.

From this place he wrote repeated letters to his wife, begging her to come down and live with him, but she declined. The excuse alleged was that Messenger, the husband, had no house in St. Louis, and that she was expecting to be confined, and that she was comfortably provided for where she was.

After the birth of her second child, the plaintiff came to St. Louis and found employment as a teacher in the public schools at a salary sufficient to support herself, her mother and her children. The defendant visited her and again begged her to live with him, but she persistently declined.

Finally, in November, 1869, the plaintiff agreed to live with defendant if he would pay certain debts of hers, and he did pay a portion of them, but in February, 1870, she retracted and refused to live with him.

After a controversy had arisen in the courts here in regard to the custody of the children, Mrs. Messenger wrote a letter to her husband offering to live with him, but Mr. Messenger treated the letter as a device to prevent the intended suit for divorce, and therefore paid no attention to it, returning no answer, except verbally.

Upon these facts, about which there is no dispute, it is perfectly clear that the plaintiff has no claim for divorce on the ground of desertion.

There is no evidence of any desertion, unless we adopt the opinion, that the wife has the right to dictate to her husband where he shall live and what employment he shall assume, and that the poverty of the husband is a valid excuse to the wife for declining to live with him. We have never understood the marital relation in this way. We have supposed it was the duty of the wife to live with her husband and abide by his fortunes in sickness and health, in poverty and riches, to make his will her law, where it is not in conflict with the law of God.

The humiliating proposal of Mr. Bliss was properly declined.

There is no ground whatever for a divorce on the part of the plaintiff, but there is very clear evidence that the defendant is entitled to a divorce on the ground of his wife's desertion of him for more than one year. The letter of November 26, 1870, is plainly the result of a scheme to prevent a suit by defendant, and so it was regarded by Judge Woerner, who was the referee in the case.

It is clear that the plaintiff has for five years persistently declined to live with her husband. Whether he had the means of providing her with an establishment suited to her views, is, in our opinion, of no importance.

The case of Gillinwaters vs. Gillinwaters, 28 Mo., 61, is relied on to show that the husband must offer the wife a suitable residence in order to require her to return, but that was a case in which the husband was seeking a divorce on the ground of desertion, and Judge Scott, who was very much opposed to divorces, was impressed with the idea that the husband who sought the divorce, brought about the condition of affairs which required the wife's absence. He observes, that the "disposition of his property seems to have been made with a view to effect the very object he has attained and of which he now complains, and for which he would have a divorce." He observes, finally, "It is clear that the plaintiff was as anxious for a separation as the defendant, and the little arts he practiced in the hope of keeping the law on his side, serve only to evince his real desire."

So in this case, the "little arts" practiced by plaintiff clearly evince a determination not to submit to the marital rights of her husband. We have no idea that Judge Scott ever imagined that a wife had a right to desert her husband because he was poor and unable to keep up an establishment commensurate with her views and expectations; she is bound to stand by him to the last, through all the changes of fortune, as he is by her.

Mrs. Messenger, the plaintiff, seems to have entertained a very different opinion in relation to the obligations she assumed; she seems to have been of opinion, that her husband was under obligations to afford her such a home and house as his circumstances at the time of the marriage enabled him to do, and that when he ceased to do so, she was under no obligations to follow his adverse fortunes; that if her friends would better provide for her, she might desert him and fall back upon the bounty of her friends or upon her own resources.

We think this is a mistaken view of the relation of husband and wife. The opinion is of course based on the hypothesis, that there was no such abuse of the marital relations, by cruelty or indignities, as justified a separation. The question is one of desertion, and we hold that the wife is bound to follow the fortunes of her husband, and to live where he chooses to live, and in the style and manner which he may adopt, and such will be the determination of a wife who is devoted to her husband, and who does not assume to be wiser than he is.

It being conceded in this case, that the charges of cruelty and indignities to the person are abandoned as groundless, and the case being rested on the sole ground of desertion, we are clearly of opinion that the desertion was on the part of the plaintiff. The letters between the parties are quite conclusive on this point. Those of the wife are excessively cold, and amid all variations are the expression of the same uniform determination, which was that she would live with her husband whenever he could make it to her interest financially to do so, but not until then, while those of the defendant indicate an affection which seems not to have been reciprocated.

We think the defendant is entitled to a divorce under our statutes, on the ground of wife's desertion. The case will, therefore, be remanded with a view to such decree.

In regard to the children, we have great objections to depriving the mother of the control of infant children, especially

when they are females and when the mother is entirely competent and peculiarily adapted to bring up and educate them; and although the law gives the father the custody of such children generally, we think the decree directed in favor of the defendant should be so framed as to continue the care and custody of the children in the plaintiff, subject, however, to any subsequent order of the court. The restrictions against marriage should be removed so far as plaintiff is concerned.

The judgment is reversed and the cause remanded, with instructions to enter a decree in conformity with this opinion. All the judges concur.