MINNIE LINDENSCHMIDT, Respondent, v. CHARLES LINDENSCHMIDT, Appellant.

### St. Louis Court of Appeals, February 14, 1888.

HUSBAND AND WIFE—SEPARATE MAINTENANCE.—Where a wife lives apart from her husband with his consent he is still bound to support her ; and, if it be not shown that she has refused to return to him upon his request, she is entitled to a decree for maintenance.

APPEAL from the St. Louis Circuit Court, HON. JAMES A. SEDDON, Judge.

*Affirmed.*

A. BINSWANGER, for the appellant:    A wife forfeits her right to support by abandoning the husband. *Williams v. Prince*, 3 Strob. 493 ; *Angelo v. Angelo*, 81 Ill. 255 ; *Allen v. Aldrich*, 29 N. H. 73 ; *Brown v. Patton*, 3 Humph. 137.    Or dwelling separate from him without his consent or fault.  *Schindel v. Schindel*, 12 Md. 314 ; *Rutherford v. Coxe*, 11 Mo. 353 ; *Thorne v. Kathan*, 51 Vt. 523.    She cannot maintain a suit for

maintenance and support when she is in fault. *Angelo v. Angelo*, 81 Ill. 251; *Boggess v. Boggess*, 4 Dana, 307. Or if she left him without proper cause. *Slack v. Slack*, Dud. (Ga.) 165; *Carr v. Carr*, 22 Grat. 168. When one party terminates the cohabitation by desertion, the other is not bound to take any steps to restore it. *Ford v. Ford*, 10 N. E. Rep. 475. If a wife leaves her husband and his home, and goes and continues to reside elsewhere, this is, *prima facie*, an abandonment on her part, and the burden of proof is upon her to show that her going away was not voluntary, but that she was compelled to go by his treatment or command. *Starkey v. Starkey*, 21 N. J. Eq. 135. Abandonment without good cause, and refusal to provide for and support a wife, is good ground for a decree of maintenance. *Hooper v. Hooper*, 19 Mo. 355; *Miller v. Miller*, 14 Mo. App. 420; *Cannon v. Cannon*, 17 Mo. App. 294. "So long as the husband has committed no breach of matrimonial duty, he is under no obligations to provide the wife a separate maintenance, and she cannot claim it on the ground of her own misconduct." Bishop on Marriage and Divorce, 564. It is against good morals, against public policy and the best interests of society, to enable a wife, for every imaginary, trivial cause to abandon her husband and require him to support her elsewhere. *Thorne v. Kathan*, 51 Vt. 523; *Schindel v. Schindel*, 12 Md. 314; *Boggess v. Boggess*, 4 Dana, 307.

HERMAN A. HAEUSSLER, for the respondent: The whole question at issue was one of fact, to be passed on by the trial court, who saw the parties and the witnesses, and heard the evidence. The facts were passed upon and judgment rendered. There was ample evidence to support the finding, under section 3283, Revised Statutes, 1879.

THOMPSON, J., delivered the opinion of the court.

This action is brought by a wife against her husband for maintenance. A hearing in the circuit court resulted

in a decree in her favor in the sum of $43.35 per month. This was based on the view that she was entitled to ten dollars a week, which was the utmost amount which she claimed. The parties were married on the twentieth of October, 1886, and lived together until the twenty-first of January, 1887, just three months and one day, when they finally separated, under the circumstances hereafter stated. At the time of the marriage the husband was about thirty years of age, and lived with his father's family in a house in St. Louis which had been the family residence for twenty-five or twenty-six years. The business of the father was the keeping of a retail grocery, in a building which was situated across a courtyard from the family residence. The family consisted, besides the newly-married couple, of the father, who was an invalid, and who died soon after the marriage and before the separation; of the mother; of a married sister, her husband and their infant child; and of another sister, unmarried. The defendant fitted up, for the occupancy of himself and bride, a single room on the second floor of the house, which was warmed by a wood stove. The married sister and her husband occupied two rooms in the same house. In an adjoining house lived another daughter of the defendant's family with her husband.

The newly-married couple seem to have got along very well together during the first month, and then dissensions and difficulties sprang up. We do not think it would be a proper exercise of discretion for us to spread out in a judicial opinion the details of these unhappy differences; since there is reason to hope that they may be removed, and that this unfortunate couple may hereafter come together and live together as they ought to do. It is sufficient to say that the record impresses us with the belief that the husband was a quiet, industrious, good-natured, and kind-hearted man, devoted assiduously to the business which the death of the father left in his charge—possibly more devoted to the business than to the young wife—and very much under

the influence of the members of his own family ; that the wife grew unhappy in her surroundings and exhibited some serious faults of temper in her treatment of her husband, which she might not have exhibited under other circumstances ; and that the mother and the sisters, as often happens in such cases, may have entertained more or less of a feeling of jealousy toward the newcomer. To omit details, she manifested an unwillingness to remain longer in her present quarters ; he, on the other hand, was unwilling to go to the expense of fitting up a separate household establishment, but was willing to furnish three rooms for her on the first floor, where they were to live, and board two of the clerks employed in the store. On the morning on which she left, he seems to have brought about an interview between her and his mother and unmarried sister, with the hope of inducing her to consent to this arrangement. The interview resulted in a quarrel and in the use of hard words, at least by the unmarried sister toward the plaintiff. The plaintiff came down into the store in a state of excitement and appealed to one of the clerks to know what she should do. He referred her to the defendant. The defendant advised her to go home to her mother, and promised to visit her at her mother's house on the following Sunday and make some arrangement for the future. He never kept this promise, and gave, on the witness-stand, as a reason for not keeping it, that he was afraid of getting a lecture from plaintiff's mother—a thing about which the plaintiff had hinted on some former occasion. This, of course, was no reason for his failure to keep such a promise, or to discharge the obligation involved in it. The wife left the family residence of her husband on Friday. He not appearing on Sunday, according to his promise, she sent her sister to him on Monday. The testimony is much at variance as to the object of the visit of the sister. The defendant's testimony tended to show that it was for the purpose of demanding that the effects of the plaintiff should be sent to her mother's residence ; while the plaintiff's

testimony was to the effect that the visit was one of solicitude to find out what the defendant intended to do, and to get one or two slight articles from her effects, of which the plaintiff was in need. There is also a discrepancy in the testimony as to whether the plaintiff had packed her effects preparatory to leaving, or whether they were packed by the husband's relatives after she left. At all events, they were sent to her by the husband on Monday afternoon, the day of the visit of the plaintiff's sister. We allude to this phase of the testimony without attaching much importance to it, further than to say we do not credit so much of it as would impute to the plaintiff the packing of her effects and a deliberate preparation for the final departure before the scene occurred which resulted in it.

On the following Wednesday the plaintiff went herself to the store kept by the defendant, with the view of finding out what he was going to do. There is considerable discrepancy as to what took place during this interview; but it is clear that his mother and one or both of his sisters interfered, and that at least one of the sisters appealed to him "not to make up with her," and that the mother laid hold of her with her hands covered with flour, but whether in anger or in kindness is left by the testimony in dispute. He did not "make up with her." He seems to have found himself between two opposing influences, and he sat down quite overcome, gave her no satisfaction, and yielded in a negative way to the members of his own family.

This, clearly, is not such a case as counsel for the defendant has contended for— a case of unjustifiable abandonment by a wife of the bed and board of her husband, in which case she forfeits her right of maintenance ; but it is a case where she plainly left with his consent. That he is willing to have her return does not appear. His answers on this point are evasive, to the effect that the rooms are still there. After what has taken place between her and his mother and sisters, it would scarcely be just to expect her to return and voluntarily live in the

same family with them. It would probably be unpleasant for her and for them. That she is unwilling to live with him if he will provide a separate household establishment does not appear ; and it is to be hoped that this will be the final solution of this unhappy controversy. No reason was given by him for not yielding to her wish in this respect, except that it was necessary to be near the store where his business was carried on ; but it does not appear that a separate house could not be procured at moderate expense near the store, where he would not be separated from his business and from his mother and unmarried sister. She is bound, if he requires it, to return to his house and share the lot which he shares, whether he sees fit to allow other members of his family to live with him or not. If she refuses to do this, she will forfeit her right to support. He, on the other hand, will be bound, in case of her return, to protect her from insult or abuse at the hands of other members of his family, — of which, we apprehend, there is really no danger. The defendant seems to have proceeded upon the idea that his first duty was to his mother and sister, and his second duty to his wife, or, at least, that his duty to his wife was only equal to his duty to them. This is a misconception of the relation of a married man to the members of his own family. He shall, if necessary, forsake them and cleave unto his wife. But it does not at all appear that in the present case it will be necessary for him to forsake them, or to abnegate any of his duties toward them.

This case seems to be governed by the principle stated in *Dwyer v. Dwyer*, 26 Mo. App. 653, applicable to a state of facts where the spouses have quarreled and voluntarily separated : " It is not doubted by any member of the court that, while a wife remains away from her husband's domicile, with his consent, under such circumstances, he is bound in law to support her."

As already stated, the decree of the circuit court gives the plaintiff the utmost allowance which her counsel claimed at the trial ; but as no objection was

made on the ground of its being excessive, we cannot, on any view which we might take of the relative conduct of the parties, reduce it to a smaller sum. Of course, the decree will be subject to any future modifications by the circuit court, which changes of circumstances or the conduct of the parties may justify.

The judgment will be affirmed. It is so ordered. Judge Rombauer concurs ; Judge Lewis not sitting.