Spengler v. Spengler.

## ALICE P. SPENGLER, Respondent, v. LOUIS M. SPENGLER, Appellant.

### St. Louis Court of Appeals, December 3, 1889.

Husband and Wife: ABANDONMENT. A wife who leaves her husband with his consent, because of torment and insult suffered from his relations living with him, is not bound to return to him, unless he requests her to do so, and assures her of protection from the continuance of the wrong.

*Appeal from the St. Louis City Circuit Court.*—HON. LEROY B. VALLIANT, Judge.

AFFIRMED.

*Rassieur & Schnurmacher*, for the appellant.

The court erred in admitting and considering a great mass of incompetent evidence. Conversations between plaintiff and her father, mother and sisters, relative to her alleged complaints; quarrels between her sisters and members of defendant's family; alleged quarrels between herself and defendant's family; all in the absence of defendant, and even without proof that he had been made acquainted with these affairs. The decree is not sustained by the evidence. The proof showed no abandonment of plaintiff. On the contrary, she positively declined to live with defendant in the home he had provided, and undertook to determine herself where he should reside, and what should constitute a "suitable" home. *Messenger v. Messenger*, 56 Mo. 329; *Lindenschmidt v. Lindenschmidt*, 29 Mo. App. 295; *State v. Greenup*, 30 Mo. App. 299.

*Ford Smith*, for the respondent.

There was no error in the admission of the evidence objected to. The conduct of defendant's mother and

sisters was a proper subject of inquiry. The conversations were excluded, when objected to. The defendant consented to the removal of the · plaintiff. He even refused to take her back. An offer to take her back would have been unavailing, unless made in good faith. *Messenger v. Messenger*, 56 Mo. 329; *McClurg's Appeal*, 66 Pa. St. 366; *May v. May*, 62 Pa. St. 206; *Johnson v. Johnson*, 16 N. E. Rep. 891. But, even if he had urged her to return to his mother's house, she would not have been required to do so. The treatment' she received when there endangered her health, sanity and life. Should she return, she would be again subjected to the same treatment. A husband cannot require his wife to reside where her health will be jeopardized, or where there is reasonable cause to·believe she will receive such treatment as to affect it injuriously. *Powell v. Powell*, 29 Vermont, 148; *McCormick v. McCormick*, 19 Wis. 172; *Kinsey v. Kinsey*, 1 Yeates, 78; *Bailey v. Bailey*, 97 Mass. 373; *Kelly v. Kelly*, L. R., 2 Pro. and Div. 31, 59; *Butler v. Butler*, 1 Parsons, Sel. Eq. Cas. 329; *Breinig v. Breinig*, 26 Pa. St. 161; *Dysart v. Dysart*, 11 Jurist, 490.

BRIGGS, J., delivered the opinion of the court.

This is an action by a wife against her husband for maintenance. The trial in the circuit court resulted in favor of the wife, and the defendant was ordered to pay her twenty-five dollars per month. From this judgment or decree, the defendant has appealed, and complains of the admission of incompetent and irrelevant evidence, and that the decree was not authorized by the evidence. It is not our purpose, nor do we deem it necessary, to spread upon the records of this court the details of the domestic troubles of the parties, which finally culminated in their separation. The following synopsis of the evidence we think sufficient : The parties were married on the twelfth day of October, 1887, and lived

together, in the city of St. Louis, until the twenty-eighth day of January, 1888. The defendant's mother kept house in the city, and her family consisted of herself and two unmarried daughters. Previous to the marriage, the defendant had lived with his mother as a member of the family, and she and her daughters were, to a certain extent, dependent on him for support. The couple began their married life as members of this family, and, during its continuance, the female relatives of the defendant were not very amiable towards the young wife, if her statement is worthy of belief. The plaintiff, in her testimony, has but little fault to find with her husband's personal conduct towards her, except that he left her alone during two evenings in the week, and failed to protect her against the persecutions and annoyances, to which she was daily subjected, at the hands of his mother and sisters. According to the wife's story, she was given to understand by the husband's relations, a few days after her marriage, that her presence in the family was distasteful, and that this was manifested daily, in many ways. In the forepart of January, the plaintiff fell on the ice, which fall, in its consequences, was so serious to the young wife, as to require for her the most watchful and tender care. During her illness, the defendant's mother and sisters continued to persecute and annoy her, and this was likely to result in the permanent impairment of her health. The situation of matters was fully explained to the defendant, and he was asked by his wife to protect her, which he either declined, or was unable, to do. The trouble was made known to her physician, and he impressed on the defendant the necessity of absolute quiet for her. At this time, the plaintiff's mother and sisters were informed of the treatment she was receiving at the hands of the other members of the defendant's family, and they undertook to nurse her, and give her the attention that one in her condition of health required.

Their visits to the house extended the difficulty to the female members of the two families, and resulted in open quarrels and threats of personal violence, in the presence and hearing of the plaintiff. This condition of affairs continued until the evening of January 28, when the plaintiff's father visited her. He found her in her room, alone, sick and unconscious. The husband was at a social gathering in the neighborhood, and his mother and sisters were in another portion of the house. The plaintiff's father found the defendant, and informed him of his wife's condition, and he also suggested that, in the present state of her health, he thought it advisable to remove her to his house. The defendant sent for a carriage, and she was removed that night. What occurred on that occasion, and afterwards, is a matter of dispute. The defendant claims that his wife left him without his consent, and that he told her, if she did leave, he would not permit her to come back. He admitted that he ordered a carriage to take her away, and that he afterwards paid the hire, but he asserted that he did it at the request of the plaintiff's father. On the other hand, the plaintiff, her mother and father, and one of her sisters, all swear, that they were present at the interview between the plaintiff and defendant, and that he not only consented to her removal, but advised it; that he told his wife she had better go, and that their separation would be but for a short time; that, after assisting her into the carriage, he kissed her, and promised to visit her the next day. In this last statement, the plaintiff and her witnesses are corroborated by William Wuench, the driver of the carriage. The defendant admitted that he never visited his wife after she left him, and that he had never asked her to return to him; but he stated, on the witness stand, that he was willing to take her back, provided that she would live at his mother's; that he was under obligations to take care of his mother and sisters, and he was unable

to support her elsewhere. It also appeared that, prior to the institution of this suit, the defendant, in answer to a request of the plaintiff to provide her a house, positively refused to have any further communication with her. The defendant denied that he was advised, or knew, of any unkind treatment of his wife by his relatives, but, in this, he is contradicted by the other witnesses.

A careful reading of the record convinces us, that the plaintiff left the defendant's house with his consent, and that he knew that the relations between his wife and his mother and sisters were of a very disagreeable character, and that this condition of affairs prevented his wife's recovery, and had rendered her very unhappy. After the plaintiff left, it would seem that the defendant submitted to the opposing influence of his mother and sisters, and this, aided by one or two stormy interviews and some correspondence between the parties, induced the defendant to write a very caustic and cruel letter to his wife, which contained the following: "In future, I don't wish to receive or hold any communication with you, or any of your family, of any kind."

The evidence, as preserved in the record, does not present a case of unjustifiable abandonment unless it was the duty of the plaintiff, under the circumstances, to return voluntarily to the house of the defendant's mother. It is the duty of the wife to follow the fortunes of her husband, and be content with such a house and style of living as his means will justify, and the law will not countenance her abandonment of the husband on account of his poverty, or because the manner of living which he has seen fit to adopt is not in accord with his wife's ideas on the subject. But the law contemplates that the husband shall furnish his wife with more than food and shelter. Men of ordinary compassion do that much for their domestic animals. The husband must furnish his wife with a *home*, in which

her domestic happiness is considered.  If he treats her cruelly himself, the law will not compel her to live with him; and, if he suffers other members of his family to torment and insult her, he is equally guilty.  The plaintiff's charge of neglect and abuse by her husband's relations is uncontradicted, and there is nothing in the record to show that the defendant ever gave the plaintiff any assurance that her life would be different if she would again live with him.  As plaintiff left with the consent of the defendant, and the latter has failed to request the plaintiff to return, and to give her the assurance that he would protect her from insult and annoyance, the wife's right under the statute to a decree for maintenance became complete.

The defendant's counsel insist that the case of *Messenger v. Messenger*, 56 Mo. 329, and that of *Lindenschmidt v. Lindenschmidt*, 29 Mo. App. 295, declare a different rule.  In the *Messenger case* Judge NAPTON said.  "that the wife is bound to follow the fortunes of her husband and to live where he chooses to live, and in the style and manner which he may adopt, and such will be the determination of a wife who is devoted to her husband, and who does not assume to be wiser than he is."  The language of this decision is very broad, but it must be read and considered in the light of the particular facts of the case in judgment. The defendant had been unfortunate in business and had lost his wealth.  His wife separated from him without his consent, and afterwards refused to live with him on account of his poverty, or because he was unable to support her in their former style of living.  Judge NAPTON held that this was no abandonment of the wife, but was an abandonment of the husband, and it was to this state of facts, he applied the language quoted. The facts in the *Lindenschmidt case* were quite similar to those of the case at bar, and we think the conclusion, arrived at by us, is sustained and authorized by the

decision of the court in that case. Judge THOMPSON in disposing of the *Lindenschmidt case* said: "After what has taken place between her and his mother and sisters, it would scarcely be just to expect her to return and voluntarily live in the same family with him. It would probably be unpleasant for her and for them." It was also decided by the court that the husband had a right to allow other members of his family to live with him, whether it suited the wife or not, but that it was his duty to *ask* her to return, and, after she did return, to protect her from insult and abuse.

There is a line of authorities in other states, to which our attention has been called by the plaintiff's counsel, to the effect that the wife is not so far under the control and dominion of the husband, as to be forced by him to return to a house where her health would likely be jeopardized or impaired. As the defendant did not ask his wife to return, and did not promise her better treatment if she did return, it will not be necessary for us to discuss that view of the case.

The defendant objected to any evidence touching the character of plaintiff's treatment by his mother and sisters, and to conversations between them during this absence. We think these matters were proper subjects of inquiry, especially as plaintiff's evidence tended to show that the defendant was fully advised of the domestic troubles, and neglected to protect her. All conversations between the plaintiff and the members of her family seem to have been excluded whenever objected to. There was some incompetent evidence, inadvertently admitted, on both sides, but it was not properly objected to, and its admission could not possibly have prejudiced the case, or changed the result. We think the conclusion arrived at by the trial judge was right, and, as we find no reversible error in the record, the judgment will be affirmed. All the judges concur.