Schuman v. Schuman.

---

# LAURA A. SCHUMAN, Appellant, v. EDWARD W. SCHUMAN, Respondent.

### St. Louis Court of Appeals, January 7, 1902

1. **Husband: HEAD OF HOUSEHOLD: COMMON LAW: FAMILY: DOMICILE.** Under the common law the husband is the head of the household and entitled, generally, to select the family domicile.

2. ———: DIVORCE: FACTS REVIEWED: DESERTION NOT ESTABLISHED. The facts of this divorce case are reviewed, and held not to establish an unreasonable absence or desertion on the part of the husband.

3. ———: ———: HUSBAND NOT GUILTY OF DESERTION. A husband is not guilty of absenting himself from his wife without reasonable cause where she declines to go with him to a new abode of his choice, or if she consents to his living apart from her in such an abode, and he meanwhile offers to perform all his duties to her.

4. ———: ———: HOME OF HUSBAND, THE WIFE'S. The wife is bound to abide with her husband so long as he performs his duties to her. Neither coolness of manner nor want of expressions of affection justify her separation from him.

5. ———: ———: DESERTION OF WIFE, DEFINED. The refusal of a wife to accompany her husband to a new home within their own country is desertion on her part.

6. ———: ———: ———. Whether it is necessary for a spouse who has been left by the other to invite the latter to return before acquiring a right to a divorce for desertion, *quaere?*

7. ———: ———: EQUITABLE RULES GOVERN: REVIEW IN DIVORCE CASES. The review of a suit for divorce on appeal is governed by the rules applicable to equity cases and extends to the law and the facts. While the appellate court gives due weight to the findings of fact in the trial court in these suits it is not bound to affirm them if convinced that they are against the preponderance of the evidence.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty,* Judge.

AFFIRMED.

*W. B. Homer* for appellant.

(1) There should have been a decree for the plaintiff, and the court erred in dismissing the bill of plaintiff for a divorce. (2) The plaintiff fulfilled the requirements of the law, having shown a cessation of cohabitation for one year, and defendant's intention to leave plaintiff. Defendant failed to show any consent on the part of plaintiff to the desertion, or that plaintiff committed any breach of matrimonial duty which justified the desertion. 1 Bishop on Marriage and Divorce, secs. 1670-71; Sargent v. Sargent, 36 N. J. Eq. 644; Gilmer v. Gilmer, 37 Mo. App. 672; Hall v. Hall, 77 Mo. App. 600; Ulrey v. Ulrey, 80 Mo. App. 51; Kilpatrick v. Kilpatrick, 80 Mo. App. 72. (3) The court erred in refusing to receive proper testimony offered by plaintiff and in admitting im-

Schuman v. Schuman.

proper testimony offered by defendant. Winchombe v. Winchombe, 8 Scotch Sess. Cas. (4 Ser.) 726.

*Kehr & Tittmann* for respondent.

(1) Even in equity cases, an appellate court will, unless the chancellor has manifestly disregarded the evidence, defer to his finding on oral evidence, on account of the superior advantages he possessed for weighing the evidence and judging of the credibility of witnesses. Shanklin v. McCracken, 151 Mo. 587; Warren v. Nickles, 72 Mo. App. 489; Hartley v. Hartley, 143 Mo. 216; Swan v. Stevens, 143 Mo. 384. (2) When defendant left the house of his mother-in-law it was plaintiff's duty to go with him, especially after having been requested by him to do so. Messenger v. Messenger, 56 Mo. 329; Jones v. Jones, 55 Mo. App. 527; Hair v. Hair, 10 Rich. Equ. 163. (3) The evidence shows that defendant's departure from the house took place with the consent of plaintiff, and that she at all times acquiesced therein. Hence, defendant was not guilty of desertion. Droege v. Droege, 55 Mo. App. 481, and cases cited; Hall v. Hall, 77 Mo. App. 600.

BARCLAY, J.—In this case a wife sues for a divorce from her husband. The trial court denied her petition. She then brought this appeal.

The principals in the suit have relieved it of much of the bitterness which often infects litigation of this sort. Their bearing toward each other throughout this ordeal of law has been such as to give promise that the judgment which we are about to pronounce may be accepted as a guide toward a return to their former happiness, whose influence appears not to have been wholly lost in the stress of their forensic experience.

The wife, as a witness said: "We had very little disagreements; he did not abuse me; he did not use harsh language to me; he never laid violent hands on me." She says that her

personal treatment of him was affectionate. There seems no reason to doubt the statement; for the husband, on his part, declared: "I am not complaining of my wife in any way." The tone of the evidence bears the impress of memories which both husband and wife are loth to lose. We can not doubt that both regret their unfortunate controversy—for controversy there is, which it is our duty to determine.

The wife regards her husband's conduct as amounting to desertion within the meaning of Missouri law (R. S. 1899, sec. 2921). To her charge he interposes a denial; but he makes no counter charge and does not ask a separation.

There are some undisputed facts. The parties were married, February 8, 1899. They went to the home of the wife's mother and lived together there until December 27, 1899, when the husband left the house and took up his abode in another part of the city of St. Louis. His wife remained with her mother. The latter was the wife of Dr. Trittermann when these parties were married. Plaintiff is the offspring of a prior marriage of her mother. Her stepfather treated her with fatherly kindness. He was absent in Europe for some months in 1899. This fact, according to defendant's statement, furnished the reason why defendant did not leave the Trittermann home sooner than he did. He says he had promised the doctor to keep a sort of oversight of affairs at the house during the doctor's absence, and so he deferred leaving until the doctor's return, despite his own wish to leave sooner, in consequence of objections expressed by Mrs. Trittermann to him personally. She considered defendant cold and indifferent toward her daughter. The latter had the same impression, and occasionally would shed tears on account of it.

There are some conflicts of evidence in the record. But there are enough facts discernible to reach a judgment on this appeal, without solving all the problems involved in the disputed testimony.

Defendant is evidently a reticent and reserved man, of

positive character. "You couldn't quarrel with him; he wouldn't talk," his wife declares. He did not manifest affection in a manner which plaintiff and her mother considered natural or usual in the home circle. His evidence, however, indicates that he is attached to his wife. He desires her to live with him, and objects to a dissolution of the marriage tie. Mrs. Trittermann became irritated at his seeming coldness, and complained of it to him. Defendant's evidence is that she became disagreeable and violent in her objections, ordered him out of the house; then apologized, and afterwards repeated her order. Her testimony denies some of these charges. She admits that she was distressed at his course, and that she finally told him and her daughter "in a nice way," to seek other quarters, because she could not bear to see the husband's coldness to his wife. The wife said that on two occasions her mother told them to move away, and that she then would have gone with her husband. She endeavored to smooth over the differences between her husband and her mother. She did not succeed. Finally, the husband determined to depart from the house, and did so, December 27, 1899, about midnight. The wife remained. A few days later he called to get his clothing and personal belongings. His wife had packed them for him, meanwhile, in his trunks or valises, in compliance with his request by telephone.

Since then the parties have lived apart. The husband called about ten days later with a friend and asked to remove some furniture. He had engaged, temporarily, two rooms at the house of his sister. He says that he invited his wife to come with him, both before and after he left her family domicile. He admits that he told her, at the same time, that he would not permit her mother to step into his house. The wife denies the invitation to go elsewhere with him. We do not consider it material to this judgment to decide upon that issue.

This suit was begun, January 3, 1901, very soon after the efflux of a year from the beginning of the separation.

Meanwhile, Dr. Trittermann has died, and the plaintiff still remains with her mother.

The only charge on which a divorce is now sought is that the husband "has absented himself without a reasonable cause for the space of one year," to quote the petition and the statute on which it is founded.

1. The review of a suit for divorce is governed by the rules applicable to equity causes, in so far as concerns the extent of revisory power. An appellate court in this class of statutory cases has jurisdiction to review both the law and the facts and to render such a decree as may be just. This established rule of procedure is probably referable to our tendency to follow the traditions of English practice, which assigned cases of this nature to the ecclesiastical courts where appeals reached both law and fact.

Yet when a trial court has had the advantage of a personal view of the witnesses under examination, it has superior opportunities to sift the oral evidence, to sever the wheat from the chaff, and to reach the very truth of matters of fact in dispute. Hence, an appellate court gives due weight to the findings of fact by the trial court in divorce cases, even when expressed (as in this instance) by a general conclusion. But it is not bound to affirm those findings if convinced that they are against the preponderance of the evidence. Hartley v. Hartley, 143 Mo. 216; Lawlor v. Lawlor, 76 Mo. App. 637; Strahorn v. Strahorn, 82 Mo. App. 580.

2. It is a fixed rule of the jurisprudence which governs our official action that a wife is in duty bound to live with her husband, so long, at least, as he performs his duties toward her. Neither coolness of manner nor want of demonstrative expressions of affection constitutes, of itself, a reasonable cause for her establishing an abode separate from him. Ruth's appeal to her mother-in-law outlines a wife's duty to her husband in this particular: "Whither thou goest, I will go." A more ancient definition of that duty is found in the scripture which

declares that a man shall "leave his father and mother and shall cleave to his wife" (Genesis, 2:24). Some courts have taken that definition as a text for their decisions. Powell v. Powell, 29 Vt. 150; Albee v. Albee, 43 Ill. App. 374 (affirmed, 141 Ill. 550). And the duty itself is equally obligatory upon a wife. An interesting discussion of it is found in 53 Central Law Journal 264. The Supreme Court of Missouri has given that rule of duty vigorous enforcement in a noted case which is binding authority to us. Messenger v. Messenger, 56 Mo. 329. The rule has been recognized and followed in decisions of this court. Lindenschmidt v. Lindenschmidt, 29 Mo. App. 295; Kaster v. Kaster, 43 Mo. App. 115. So strict is this rule that a refusal by a wife to accompany her husband to a new home of his choice, at least within the same country as their former home, has been held to amount to desertion on her part. Hunt v. Hunt, 29 N. J. Eq. 96; Beck v. Beck, 163 Pa. St. 649; Phelan v. Phelan, 135 Ill. 445; Hair v. Hair, 10 Rich. Eq. 163. This precept is but part of the common-law doctrine that the husband is the head of the household and as such is entitled (as a general rule, subject to some exceptions not now involved) to select the domicile of the family.

3. The judgment of the learned trial judge in this case is evidently based on a finding either that the wife declined to go with her husband to his new abode or that she consented or acquiesced in his living apart from her after he left her family home. Either of those findings would warrant the conclusion reached on the circuit. We consider that there is testimony to support both of those findings and that neither is so unfounded as to warrant our reversal of it on the weight of the evidence before us.

If the wife declined to accompany her husband to a new abode she certainly could not successfully assert that he absented himself from her without reasonable cause, under the principles announced in the decisions already cited in this opinion. If, on the other hand, she desired, consented to, or acqui-

csced in, his living apart from her, then his act in so doing would be robbed of its sting. Her acquiescence would furnish a cause for his remaining away which the law regards as reasonable, at least as against her claim for a divorce on account of abandonment.

It has been held, in some circumstances, that it is the duty of a spouse, who has been abandoned by the other, to take some affirmative step toward inviting the wanderer to return, before acquiring a right to a divorce on the ground of desertion. Spengler v. Spengler, 38 Mo. App. 266; Hall v. Hall, 77 Mo. App. 600; Gray v. Gray, 15 Ala. 779; Smithson v. Smithson, 18 D. C. 277.

These decisions proceed on the idea that the facts of those cases required some positive action by the complaining party to indicate a dissent to the absence of the other spouse. We are not called upon to say whether such affirmative step is ever necessary on the part of a wife, for whose womanly delicacy the law entertains some regard.

The circumstances of the suit at bar furnish ground for the inference of the wife's consent to her husband's course, without referring to any omission on her part to invite him to return. The house where the wife remained was not absolutely hers. Her mother regarded the husband so unfavorably that the plaintiff should not be censured for failing to invite her husband to return to live with her there.

Nor is the wife's act of packing her husband's effects for their removal, at his request, a day or two after he left the Trittermann home, to be viewed as amounting to a consent to his final departure or to his living apart. That was an act of courtesy she might well perform without assenting to a separation.

Like the renowned Venetian heroine she perceived a divided duty. She suffered, no doubt, because of it. She attempted to reconcile the mother and the husband. When the time came to determine between them her choice of abode, she

thought herself called upon to remain with her mother. In choosing to do so she must abide the consequences, one of which is that her choice relieves her husband's departure of the character of an abandonment, so long as he clearly shows a willingness to perform his duties toward her, to live with her in some suitable home of his selection, and to treat her kindly.

His attitude toward her in the case and his testimony as a witness signify no purpose on his part to repudiate his duty as a husband. Even the threat to exclude her mother from their future home should probably be ascribed rather to anger, in the irritating circumstances of the moment, than to a deliberate purpose to carry out that threat.

There is, however, no charge of indignities advanced in this suit. The only complaint is of abandonment. That complaint can not be well founded on the facts which this record discloses. There is no substantial evidence of any design on the part of the husband to abandon his wife. We are satisfied that the learned trial judge was well warranted in finding that the defendant desired to live with his wife and desired her to follow his fortunes when he left her family roof. In that state of the facts he can not justly be held to have deserted her. Boos v. Boos, 88 Mo. App. 530.

The course which the wife has pursued has been induced, no doubt, by affection for her mother, whom she was loth to leave. The law, however, does not permit her to remain with her mother and convict her husband of abandonment in the circumstances exhibited in this case.

The judgment of the learned circuit judge was correct and we affirm it. *Bland, P. J.,* and *Goode, J.,* concur.