McGrady v. McGrady.

NANCY McGRADY, Respondent, v. DANIEL McGRADY, Appellant.

Kansas City Court of Appeals, April 4, 1892.

1.  Husband and Wife: SEPARATION: MAINTENANCE OF WIFE. If the husband's conduct is such as to render the wife's condition intolerable at his house, she can leave the house and abandon a home so rendered unfit for her habitation without forfeiting her right to support by the husband or out of his property; and the evidence in this case is *held* to justify the wife in living apart from her husband, and to entitle her to support.

2.  ———: SEPARATE MAINTENANCE OF WIFE, MEASURE OF. In estimating the separate maintenance of the wife, consideration should be given to the condition in life of the parties, their mode and style of living, their wants and necessities as evidenced by their past life and the husband's financial ability; and, on the facts in this case, a monthly allowance of $25 is considered excessive and reduced to $15.

3.  ———: ———: HUSBAND'S PROPERTY: PENSION. In estimating such separate maintenance, the husband's entire means and income, from whatever source, should be considered, as property of every description which is the husband's alone, and which is at his free disposal, constitutes a fund to be used by him for the necessary support of his family, notwithstanding it includes pension money, which is not alone for the soldier receiving it, but for his family as well, and is continued after his death to his widow and younger children.

*Appeal from the Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

MODIFIED, AFFIRMED AND REMANDED.

*Sangree & Lamm* and *John H. Bothwell,* for appellant.

(1) The statute on which this suit is based (R. S. 1889, sec. 6856) is the ninth section of the act of 1845, amended, and is but the assertion of the old equitable doctrine, inherited in our country

from the ecclesiastical courts, and which, having been denied in some of the states and allowed in others, has finally found place in the statute laws of most of the states, as in ours. It is simply "alimony without divorce." The matter is, hence, controlled by the principles regulating alimony. The terms "alimony" and "maintenance," as applied to the marriage relation, are equivalent. 2 Bishop on Mar. & Div. [5 Ed.] secs. 350, 353, 354; *Rogers v. Vines*, 6 Ire. 293, 297; *Burr v. Burr*, 7 Hill, 207; *Hooper v. Hooper*, 19 Mo. 355, 358. (2) Alimony is to be nicely adjusted to meet the infinite variety and diversity of the details of each particular case. 2 Bish. on Mar. & Div. [5 Ed.] sec. 463; *Byers v. Byers*, 21 Iowa, 268. It is regulated by and based on: *First.* The conduct of both parties. 2 Bish. on Mar. & Div. [5 Ed.] sec. 464. *Second.* The demeanor and conduct of the wife toward her husband during cohabitation. 2 Bish. on Mar. & Div., sec. 457; *Boggess v. Boggess*, 4 Dana (Ky.) 307; *Stevens v. Stevens*, 49 Mich. 504; *Connor v. Connor*, 29 Ind. 48; *Buerfenning v. Buerfenning*, 23 Minn. 569. *Third.* The condition in life, place of residence, age, physical condition and employment of the husband, the need of his own support and the support and the education of the minor children depending on him, the extent of the husband's present income, its sources, and whether from personal exertion or not his ability to earn money, the style of living to which the parties are used, the ability of the wife to labor, her age, the property of the husband, and whence derived, and every circumstance directing itself to the sound discretion of the court, is to be considered. 1 Bish. on Married Women, secs. 49, 892; 2 Lawson's Rights & Remedies, sec. 720, p. 1319; 2 Bish. on Mar. & Div. [5 Ed.] secs. 553, 554, 458, 446, 457, and cases cited; *Byers v. Byers*, 21 Iowa, 268; *McCartin v. McCartin*, 37 Mo. App. 471; *Gercke v. Gercke*, 100 Mo. 237; *Lindenschmidt v. Lindenschmidt*, 29 Mo. App. 295; 1 Am. & Eng. Ency. of Law,

pp. 480, 481, and notes. *Fourth.* The inchoate right of dower retained by the wife in her husband's real estate is to be considered. *Rea v. Rea,* 5 W. Rep. 911 ; *Gercke v. Gercke, supra. Fifth.* The wife should not have so large an allowance as to relieve her from the necessity of exertion for her own maintenance, in cases where the parties have been accustomed to labor for support, and where there are other imperative demands on the husband's modest income from his labor and property. *Farley v. Farley,* 30 Iowa, 353 ; *Abbey v. Abbey,* 32 Iowa, 573 ; *Andrews v. Andrews,* 69 Ill. 609 ; *Brown v. Brown,* 22 Mich. 242 ; *Zuver v. Zuver,* 36 Iowa, 16 ; *McClurg's Appeal,* 66 Pa. St. 366. (3) The wife should not provoke harsh treatment by her own misconduct. *Knight v. Knight,* 31 Iowa, 451 ; 1 Bish. on Mar. & Div. [4 Ed.] sec. 764. If he had cause to suspect her of unwifely conduct, he could put a gentle restraint upon her. 2 Kent's Commentaries, 181 ; Schouler's Dom. Rel. [3 Ed.] sec. 45. The wife's duty to render family service is coextensive with, and the legal equivalent of, his duty to support her. *Randall v. Randall,* 37 Mich. 563; *Grant v. Green,* 41 Iowa, 88. (4) The reasons for the separate maintenance ( which is against the policy of the law to encourage ) should be imperative when there are minor children. *Davidson v. Davidson,* 47 Mich. 151. (5) While the income of the husband is not alone to be looked to ( *Schmidt v. Schmidt,* 26 Mo. 235 ), yet the income, the source it is derived from, whether from continued labor or fixed on certain investments, whether from the property of the husband or wife, its character and extent, is the main and proper basis of alimony. *Campbell v. Campbell,* 37 Wis. 206 ; 2 Bish. on Mar. & Div. [5 Ed.] sec. 447, and *post;* secs. 456, 457, 458, 463, 464, 467; *Williams v. Williams,* 29 Wis. 517, see pp. 524, 525, 526. (6) It may be conceded in this case that Mrs. McGrady aided in accumulating some of the property, but one-half of the homestead, the last

eighty acres, was purchased by the bounty of the government given the defendant as a reward for his personal injuries and damages, his suffering and disease, incurred in the line of his duty as a soldier, and his pension money received from time to time is wholly exempt from liability for any debt, or claim, or on any account, and should not be considered in estimating alimony. Revised Statutes of the United States, 1878, secs. 4745, 4747.

*H. C. Sinnett*, for respondent.

(1) Abandonment without cause, and refusal to provide and support a wife, is good ground for a decree for maintenance. *Hooper v. Hooper*, 19 Mo. 355. (2) The amount allowed plaintiff for her maintenance is not excessive. She was married to defendant over twenty years ago; always worked hard, keeping boarders, working in the house and in the field on the farm; has borne defendant eight children, cared for them; and now, in her old age and poor health, she is homeless and without any money, and depending upon the cold charity of strangers for shelter and support, while the defendant has one hundred and sixty acres of rich and valuable land, and over $5,000 in money and other property; and, money and property that plaintiff has largely by her labor helped to accumulate. (3) There is no fixed rule as to the amount of maintenance to be granted. It runs from one-half to one-third of husband's property. *Gercke v. Gercke*, 100 Mo. 237; *McCartin v. McCartin*, 37 Mo. App. 471; *Wagner v. Wagner*, 6 Mo. 572. (4) The trial court is the best judge of the amount under the evidence. He is the judge of the credibility of the witness as to all the facts, as well as to the amount of means possessed by defendant. The trial court committed no error that this court can reverse. *Gillespy v. Stone*, 43 Mo. 356; *Blumenthal v. Lorini*, 40 Mo. 159; *McAfee v. Ryan*,

11 Mo. 364. (5) In estimating amount for mainten-
ance of wife the award will be large if the husband's
offense has been gross and the wife patient. *Bergen v.
Bergen*, 22 Ill. 187. When the wife contributed largely
to the property of the community, she should largely
share in the property. *McGee v. McGee*, 10 Ga. 477.
She should receive more when old and in ill health.
*Levett v. Levett*, 11 Ala. 763; 2 Bishop on Mar. &
Div., secs. 454, 457, 375. In absence of abuse of dis-
cretion, the allowance of maintenance by the trial court
will not be reversed, or interfered with, on appeal.
*White v. White*, 73 Col. 105.

*John Cashman*, for respondent.

(1) While the rules governing the adjustment of
alimony may be invoked as an aid in the adjustment of
questions of maintenance, the rules governing ·the
adjustment of the latter are much broader, and espe-
cially so in construing a statute as comprehensive as
ours, which puts it in the power of the chancellor or
trial judge, under almost any condition of circum-
stances, to compel the husband to keep, if not sacredly
in all things, at least practically in the matter of main-
tenance, his marriage contract. *Calonne v. Calonne*, 9
C. E. Green; *Crews v. Mooney*, 74 Mo. 26, 31. "Main-
tenance is a vested right in the wife, founded on the
marriage contract, on the weakness of the sex, on
the confidence implicitly resposed in the husband, on the
great advantages given to the husband in and over the
property of the wife. It is a duty to allow it. See
quotation in *Garland v. Garland*, 50 Miss. 694, 710.
See 1 Bishop on Mar. & Div. [5 Ed.] sec. 554, and cases
cited. (2) Maintenance, like alimony, is to be
"adjusted to meet the infinite variety and diversity of
the details of each particular case;" granted, as con-
tended by appellants, yet it is an unquestionable rule of
law that if a husband turn his wife out of doors, or by
his misconduct compel her to leave him, he is bound to

provide her with necessary lodging, clothes and sub-
sistence, and, in case of her sickness, medicines, medical
attendance and reasonable expenses incurred during
illness ; and, if he fails to make such provision, she may
obtain the same on his credit, and the person so making
it may sue the husband and recover therefor. *Wash-
burn v. Washburn*, 9 Cal. 475 ; *Shelton v. Shelton*, 18
Conn. 418 ; *Cooper v. Cooper*, 49 Ind. 393–416 ; *Graves
v. Graves*, 36 Iowa, 310 ; *Garland v. Garland, supra ;
Allen v. Allen*, 29 N. H. 36 ; *Gage v. Gage*, 34 N. Y.
293. (3) In this case there should be no contention
as to the amount fixed by the trial court for the sepa-
rate maintenance of the plaintiff ; considering the law of
adjudicated cases in our state applicable to the evidence,
that must have been accepted by the trial court as true ;
the allowance is, indeed, moderate in the extreme.
*McCartin v. McCartin*, 37 Mo. App. 471 ; *Gercke v.
Gercke*, 100 Mo. 237 ; *Wagner v. Wagner*, 6 Mo. App.
572 ; *Verner v. Verner*, 1 S. Rep. (Miss.) 52 ; *McCon-
aley v. McConaley*, 32 N. W. Rep. (Neb.) 300 ; *Pauley
v. Pauley*, 34 N. W. Rep. (Wis.) 512 ; *Segelbaum v.
Segelbaum*, 39 N. W. Rep. (Minn.) 492 ; *Cralle v. Cralle*,
6 S. E. Rep. (Va.) 12 ; *Green v. Green*, 12 S. W. Rep.
(Ky.) 945 ; *Umlauf v. Umlauf*, 22 Ill. App. 580 ; *Hed-
rick v. Hedrick*, 26 N. E. Rep. (Ind.) 768 ; *Douglass v.
Douglass*, 47 N. E. Rep. (Ia.) 92 ; *Young v. Young*, 15
S. W. Rep. (Ky.) 780 ; *Johnson v. Johnson*, 36 Ill.
App. 152, in the N. E. Rep. 891. The income of the
husband is not at all the guide in this state by which to
fix the amount of alimony or maintenance. *Schmidt v.
Schmidt*, 26 Mo. 235. And this ruling will not be dis-
turbed, or its force detracted from, by the authorities
from other states cited by appellant. (4) Answering
the question raised by the sixth point of appellant's
brief as to the part of the homestead which was partly
purchased by pension money being exempt from the
charge of maintenance of the wife, I must say that the
adjudications of the statute cited by appellants are too

numerous and distinctly positive in support of the opposite of appellant's contention to be now raised by a good lawyer, who has any regard for the feelings of a court or respect for the time of attorneys who are expected to produce authorities to refute such proposi- tions. Not only is this part of the homestead, partly purchased by pension money, not exempt from the charge sought to be placed upon it in this suit, but the court may, and no doubt did, take into consideration the amount that the defendant is in prospect of receiv- ing as pension in the future. *Hedrick v. Hedrick*, 26 N. E. Rep. (Ind.) 768 ; *McFarland v. Fish*, 12 S. E. Rep. (W. Va.) 548; *Beecher v. Baker*, 6 Dem. Sur. 129 ; *Martin v. Bank*, 14 Atl. Rep. ( Vt. ) 649 ; *Rozelle v. Rozelle*, 9 Atl. Rep. ( Pa.) 160; *Graham v. Lee*, 69 Mo.334; *Brown v. Brown*, 68 Mo. 388 ; *Whitehead v. Tapp*, 69 Mo. 415.

ELLISON, J.—Plaintiff and defendant are husband and wife, and this action was instituted under the pro- visions of section 6856, Revised Statutes, 1889, by the plaintiff wife against defendant for maintenance. The result below was a judgment in favor of plaintiff for $200 for her expense and support up to date of judg- ment, and $25 per month, thence on. Said monthly sum to continue to be paid until the further order of the court. Plaintiff and defendant resided on a farm of one hundred and sixty acres in Pettis county, and for a long period prior to their separation had not lived in har- mony. They had four living children, the oldest eighteen years of age and the youngest ( the only girl) eleven years old. The separation and discontinuance of support occurred by the plaintiff leaving the home, occasioned ( as the trial court must have found ) by the bad conduct of defendant. If defendant's conduct was such as to render plaintiff's condition, as his wife, intolerable or unbearable at his house, she could leave the house and abandon a home so rendered unfit for her habitation with- out forfeiting her right to support or maintenance by him, or out of his property. *Allen v. Allen*, 29 N. H. 63.

The evidence shows that defendant was causelessly jealous of plaintiff. That he suspected her of infidelity to him, and that in consequence of such jealousy and suspicions he persecuted her to a degree scarcely endurable. In the imagination of defendant ( and I think wholly imaginary ) there was a man visiting plaintiff. This man, unseen and unnamed, would come upon the premises in the night time and manifest his presence by making a disturbance among the chickens, by scratching on the house like a rat, or by getting on the roof of the house and scratching like a rat, or an owl.

They did not sleep together, plaintiff sleeping in a separate room with the daughter. Defendant placed iron bars across the window of her room, either to keep her from getting out, or the man from getting in. He sat up of nights, armed, waiting and watching. He employed the boys to watch their mother, and to lay out after night to intercept the approach of this man who seemed to elude all vigilance. This, and much more of like nature, only differing in smallness of detail and conception, until finally he heard a rat scratching against the west end of the house. His description of this scene is as follows : Saturday or Sunday ( the night the gun was fired ) there was a rat scratching against the west end of the building, and I got up and took my gun in my bedroom, and I got up and picked up the gun and walked out, and when I got out of the bedroom there was a hammering on the iron bars I had on the window. If I had had one minute more he would have been my chicken. The next morning was Sunday. When I came in that night she was standing in the house in her night clothes, clapping her hands, and saying, 'Oh, my God, my God, what is this?' I walked into my bedroom and left the gun there, and went to bed again. * * *

"We searched the house pretty good after breakfast, but didn't find anything. The next morning after the gun was fired off I had been out in the barn and

came in. She was standing in the door, or on the floor in the house. I asked, 'Where are you going?' She said she was going to have this thing straightened up. 'You are?' said I. 'Yes,' she said, 'I am going.' I said, 'There is no recourse on you; I bought an outlet to the big road,' and I asked her when she was coming back when she got a little way from the house, and she said I would know that when she did come back. She left from her own accord. I didn't speak but two or three words; that was all I spoke from that night. I never spoke to her until she came back on the twenty-ninth day of January. She left on the fifteenth or sixteenth of December. We kept house ourselves while she was gone, but a neighbor girl generally came and did the baking of bread, and did my washing and sewing. My little girl was at home; she did a good deal of the work, and we all pitched in and helped. My oldest boy can do a good deal about the house. When she came back she asked me to get in, and I told her no, she could not get in; she could go to the man that she was accommodating. 'Who was he?' she says. I told her I did not know who he was. I told her I did not know who he was, but if I did know I would put a load in him, but I didn't know who he was."

It appears thus that, notwithstanding this treatment, she returned in a few weeks, but defendant refused to receive her, or to permit her to enter the house. She has no independent or separate means of support, and has, without substantial fault on her part, been turned out of her home, not, I am persuaded, from a malicious and wanton purpose of defendant to cruelly treat or abuse her, but from an unreasonable and uncontrollable jealousy, so firmly conceived in his imagination that it has destroyed the happiness, good temper and contentment of each.

It is, however, insisted that the court's allowance of maintenance is excessive, considering the age, health, situation and property of defendant. He was shown to

own one hundred and sixty acres of land, worth from $20 to $35 per acre ; and to be possessed of $1,000 or $1,200 worth of personal property. He was fifty-eight, and she fifty-four, years old. Both are industrious, hard-working people, and the property, save some pension money hereafter referred to, is the result of their joint labor and frugality. As nothing was shown to the contrary, we assume that plaintiff is in good health, and still able to work as she did when she lived with the defendant. Under these conditions is the allowance excessive? In our opinion, it is.

In cases of this nature consideration should be given to the condition and situation in life of the parties—their mode and style of living; their wants and necessities as evidenced by their past life, up to the time of their separation. So, the husband's financial ability should be heeded. Poverty will not excuse him from the obligation to maintain his wife, yet such a condition should receive consideration in fixing upon a sum which he must pay. *McGee v. McGee*, 10 Ga. 477.

The plaintiff has been accustomed to work and to live on a farm. She has performed labor without complaint during the period of her marriage. Her health and strength are good, and her age is not such as to disable her. Under such circumstances she should not be maintained in idleness at the expense of the husband. *Brown v. Brown*, 22 Mich. 242 ; *Farley v. Farley*, 30 Iowa, 353; *Abbey v. Abbey*, 32 Iowa, 575. We have, therefore, concluded to modify the judgment of monthly allowance by reducing it from $25 per month to $15 per month, which latter sum, in view of her health and strength, and that she will have no children to provide or care for, will be ample to keep her in, at least, as good a position and condition as she has heretofore enjoyed.

It is further contended by defendant that, since a large portion of his property is the proceeds of

pension money paid him by the general government on account of injuries received in the late Civil War, such property should not be considered in estimating a sum for plaintiff's maintenance ; such pension, he contends, not being liable for any debt, or claim on any account. We are not inclined to give this favorable consideration. In passing upon the husband's excuse of non-ability to maintain his wife in the way she should be, under the circumstances surrounding her, his entire means and income, from whatever source, should be considered. Property of every description, which is the husband's alone, and which is at his free disposal, should constitute a fund to be used by him for the necessary support of his family, notwithstanding it includes pension money. *Hedrick v. Hedrick*, 128 Ind. 522. Besides, the bounty of the government is not alone for the soldier receiving it. It is for his family as well, and is continued after his death to the widow and younger children.

The judgment, modified as above suggested, will be affirmed, and the cause will be remanded for such modification. All concur.