DORA KINDORF, Respondent, v. WILLIAM E. KINDORF, Appellant.

St. Louis Court of Appeals, December 2, 1913.

1. MAINTENANCE: Nature of Proceeding. A suit for maintenance by a wife is in the nature of an equity proceeding.

2. APPELLATE PRACTICE: Maintenance: Conclusiveness of Findings of Facts. The findings of facts by the trial court in a maintenance suit are not binding upon the appellate court; but where there is a sharp and irreconcilable conflict in the testimony, the latter court should defer very largely to the findings of the trial court.

3. MAINTENANCE: Sufficiency of Evidence. In an action by a wife for maintenance, evidence *held* to sustain a finding that defendant struck plaintiff and drove her from his home.

4. ———: Constructive Abandonment. Where a husband's wrongful conduct renders his wife's condition intolerable, she may leave him and maintain a suit for maintenance.

5. ———: ———. The conduct of a husband in wrongfully driving his wife from him and turning her out of doors constitutes an abandonment of her.

6. ———: Prerequisites to Recovery. A wife cannot maintain an action for maintenance unless the husband has both abandoned her and failed or refused to provide for her.

7. ———: Constructive Abandonment. A husband who struck his wife and drove her from his home, without cause, cannot relieve himself of his obligation to provide for her by saying that he will support her if she returns home, where he does not request her to return nor give her any assurance as to his conduct in the future.

8. ———: Sufficiency of Evidence. In an action by a wife for maintenance, evidence *held* to warrant a finding for plaintiff.

9. ———: Damages: Excessiveness of Recovery. In an action by a wife for support and maintenance for herself and minor son, it was shown that defendant owned the house in which he lived, which was worth $1200, and a lot of ground worth about $600 and encumbered by a deed of trust for $200. Defendant testified that his average earnings were about $14 per week. Plaintiff testified that his earnings were from $15 to $18 per week. *Held*, that an allowance of $25 per month was not excessive. [REYNOLDS, P. J., dissents.]

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*C. J. Anderson* for appellant.

(1)   The petition in this case is based on Sec. 8295, R. S. 1909. In order to recover, the plaintiff's evidence must bring her within the purview of this section, i. e., abandonment by defendant and refusal or neglect to maintain and provide for her. Sec. 8295, R. S. 1909; Droege v. Droege, 52 Mo. App. 84; Sharpe v. Sharpe, 134 Mo. App. 278.   (2) In order to justify an abandonment of the husband by the wife, his con-duct towards her must have been such as would con-stitute the foundation of an action on her part for a divorce. Droege v. Droege, 52 Mo. App. 84; Pierce v. Pierce, 33 Iowa 238; Bishop on Marriage, Divorce and Separation, sec. 1742.   (3) It stands admitted that up to the day before the separation defendant always sup-ported his wife and family. Plaintiff bases her cause of action solely on the occurrences of May 13 and 14, 1911. This court should consider and weigh all the evidence in the case, but even if the court should believe that all the evidence offered by plaintiff is true, yet plain-tiff would not be entitled to recover in this case. Droege v. Droege, 52 Mo. App. 84; Davis v. Davis, 60 Mo. App. 545.   (4) This court is not bound by the findings of the judge of the trial court. Davis v. Davis, 60 Mo. App. 545; Droege v. Droege, 52 Mo. App. 84. (5) The amount of the judgment is grossly excessive, is for more than is necessary for the support and main-tenance of plaintiff and the minor son George, and is more than defendant could pay and still maintain him-self and the minor son Willie. If, therefore, the find-ing of the trial judge in favor of the plaintiff should be sustained by this court, the amount of the allow-

ance to plaintiff should be reduced. McGrady v. McGrady, 48 Mo. App. 668.

*Zachritz & Zachritz* for respondent.

(1) A suit for separate maintenance is in the nature of an equitable action, and as in equity cases, the court will defer largely to the finding of the trial court, when the evidence is conflicting. Wyrick v. Wyrick, 162 Mo. App. 723. (2) All legislation relating to wife abandonment is contained in Chapter 77, R. S. of 1909. The only issue of fact that can be properly raised is whether the husband without good cause has abandoned his wife and neglected or refused to support her. Sharpe v. Sharpe, 134 Mo. App. 278. (3) It has been decided, too, under this statute that where the husband's conduct is such as to render the wife's condition unendurable, at his home, she may leave the home without forfeiting her right to maintain an action for maintenance against him. Polster v. Polster, 145 Mo. App. 606; McGrady v. McGrady, 48 Mo. App. 668. (4) A wife leaves her husband with his consent because of torment and insult suffered from the treatment which he offers her, is not bound to return to him, unless he requests her to do so and assures her of protection from a continuance of the wrong. Spengler v. Spengler, 38 Mo. App. 266. (5) Where the husband demonstrates his lack of desire to live with the wife, or affection for her, it is sufficient to make it a case of abandonment. Louis v. Louis, 134 Mo. App. 566. (6) Where a husband strikes his wife, it authorizes her to live separate and apart from him. Propes v. Propes, 171 Mo. App. 407; Kurz v. Kurz, 119 Mo. App. 53. (7) If a husband turns the wife out of doors she has been abandoned. 14 Cyc, 613, 617.

ALLEN, J.—Plaintiff is the wife of defendant, and this action is one for her separate maintenance under

the statute. The trial court found the issues for plaintiff, and adjudged that the defendant pay her $25 per month, for the support of plaintiff and a minor child; from which judgment the defendant prosecutes this appeal.

The petition averred that, on May 14, 1911, in the city of St. Louis, defendant without cause abandoned plaintiff, and thereafter refused and neglected to maintain and provide for her and two minor children born of the marriage. The answer was a general denial.

Plaintiff and defendant were married in 1894, and lived together as husband and wife until May 14, 1911. Two children were born of the marriage, viz., George Kindorf and William Kindorf, aged, respectively, fourteen and fifteen years at the time of the trial below. It appears that defendant is a cigar maker by occupation, and that Saturday evening, May 13, 1911, he returned from his work and asked his younger son, George, to take certain cards and deliver them at a house some fifteen city blocks distant; that the boy wanted to change his clothing, for the reason that he had been playing ball that afternoon, whereby his clothes had become soiled, and that he did not want to appear upon the street in such condition. It seems that defendant objected to this and insisted that the boy go on the errand at once. The testimony is conflicting as to just what was said, but this is immaterial here. At any rate the defendant took what is referred to in the testimony as a "cat-o'nine-tails" and began to whip the boy. This occurred in the kitchen of defendant's home. It seems that the instrument which defendant used to administer this punishment consisted of a piece of leather fastened to the end of a broom handle; and that he proceeded to whip the boy severely with it. The plaintiff testified that while defendant was striking the boy she said to him: "Will, don't hit him, but talk to him," and that defendant replied: "I am doing this, and if you interfere I will

hit you both and put you out." And that defendant did thereupon strike her. Defendant denies that he so struck plaintiff, and testified that plaintiff interfered by catching hold of his arm, saying, "You ain't going to hit him for anything like that."

The difficulty ended by the boy running from the house and going to his grandmother's, where he remained until the next morning. Plaintiff testified that defendant was quarrelsome all that evening. On the following morning he sent his son, William, to get George and bring him home; and when the boys reached home and George sat down in the kitchen, defendant at once came up to him and began to beat him with a rope that he had in the meantime specially braided and prepared for that purpose. The evidence is quite convincing that the defendant brutally and unmercifully beat the boy with this instrument; the testimony of witnesses, who saw and examined the boy shortly thereafter, being to the effect that he was bruised and bleeding about the head, arms, neck, shoulders and body.

The testimony is highly conflicting as to what took place between plaintiff and defendant at this time. Plaintiff testified that the defendant also struck her with the rope, pushed her and the boy out the kitchen door, saying: "I will put you both out," telling them to "go;" and that he offered to pack her clothes and throw them out after her. George testified that, while his father was striking him, his mother came to the door, and the defendant said: "If you want to see me strike him, come on in. I will hit both of you and put you out;" that he did thereupon turn and strike the plaintiff as well as his son, pushed them both out the door and told them to go. Several other witnesses, residing in the immediate neighborhood, testified to hearing the beating of the boy, and to have heard defendant tell plaintiff and his son to go or "get out;" that plaintiff asked to have her clothes, and

that defendant said that he would help her pack them and throw them out after her.

Plaintiff thereupon left, with a bundle of her clothes, her son George going with her, and went to the home of her parents.

Defendant denies that he struck his wife either upon the day of the separation or the evening before; denies that he told her to go or get out, or that he pushed her out of the door. He says that plaintiff interfered when he was striking the boy, and that when the latter ran out of the kitchen, plaintiff said she was going to leave and did so. Defendant's evidence as to what occurred on the Sunday morning in question consisted wholly of his own testimony.

A suit for maintenance by the wife is in the nature of an equitable proceeding. The findings of the lower court are not binding upon us; but where there is a sharp and irreconcilable conflict in the testimony, such as here appears, we should and do defer very largely to the findings of the trial judge, who had the witnesses before him.

It is contended by appellant that the evidence does not show that he abandoned the plaintiff. We cannot accede to this, however; for the evidence in the record is amply sufficient to warrant the lower court in finding that the defendant not only struck the plaintiff, but that he drove her forth from his home. Where a husband's wrongful conduct renders his wife's condition intolerable, she may leave him and maintain her suit for support and maintenance under the statute. [McGrady v. McGrady, 48 Mo. App. 668; Kurtz v. Kurtz, 119 Mo. App. 53, 96 S. W. 242; Polster v. Polster, 145 Mo. App. 606, 123 S. W. 81.] And where a husband wrongfully drives his wife from him, and turns her out of doors, such conduct must perforce constitute an abandonment of her.

But it is said that, in order to recover, under the statute, plaintiff's evidence must show, not only an

abandonment by defendant, but a refusal or neglect
on his part to maintain and provide for her; and it is
urged that the evidence does not show that defendant
failed or refused to provide for plaintiff, but that he
was willing to provide for her in his own home.

It is true that there must be both an abandonment
and a failure or refusal to provide for the wife. [Pol-
ster v. Polster, supra; Youngs v. Youngs, 78 Mo. App.
225.] But the testimony fails to disclose that the de-
fendant made any effort to have his wife return to
him; and it is conceded that he has contributed noth-
ing to her support since May 14, 1911. It does not ap-
pear that he thereafter requested her to return, nor
did he give her any assurances as to his conduct in
the future. The only thing appearing in the record
pertinent to this question is testimony to the effect
that when defendant was requested to provide for
plaintiff he said that he would do so only in their
own home. Defendant cannot strike his wife, drive
her from him and turn her out of doors, without cause,
and then, without more, exonerate himself, and relieve
himself from his obligation to provide for her, by
saying that he will only support her in that home from
which he has driven her.

There is abundant evidence to support the finding
of the trial court. Indeed the testimony is quite con-
vincing that plaintiff was forcibly driven from her
home by defendant, merely because she protested
against the latter's cruelty and brutality toward their
son. And it does not appear that defendant has sought
to make amends or to have plaintiff return to him.

But it is said that the allowance to plaintiff for
the support of herself and her minor son, in the sum
of $25 per month, is excessive. Respecting this, the
record shows that the defendant owned the home in
which he lived, which he says is worth about $1200,
and that he owned a lot of ground which he values

178 Mo. App. 41

at $600, encumbered by a deed of trust for $200. He testified that his average earnings were about $14 per week. Plaintiff's testimony was that he earned from $15 to $18 per week. A careful examination of the reasons advanced by learned counsel for appellant why we should declare the monthly allowance made by the trial court excessive fails to convince us that we would be justified in reducing the amount thereof.

The judgment should be affirmed. It is so ordered. *Nortoni, J.,* concurs. *Reynolds, P. J.,* concurs, except as to the amount of the allowance. Considering the income of the defendant he thinks the allowance excessive.