ELIZABETH A. GRANT, Respondent, v. DAVID J. GRANT, Appellant.

Kansas City Court of Appeals, June 2, 1913.

1. **DIVORCE: Maintenance: Indignities.** Though the wife takes the initiative and leaves the husband's home, if she has been impelled to do so by such treatment by him as has rendered her condition intolerable and would entitle her to a divorce, she may maintain an action for support and maintenance.

2. **————: ————: ————: Trivial Cause: Choice of Home.** Where the causes of trouble between a husband and wife are trivial and where it appears that her leaving the home is largely influenced by a desire to live in town instead of on a farm, no cause of action for separate maintenance exists. Evidence examined and considered.

3. **————: ————: ————: ————: Evidence.** A letter written by the son of a husband by a former marriage, to the present wife, without the knowledge of the husband, is not proper evidence in favor of the wife's action for maintenance.

4. **ABSTRACT: Counter Abstract: Transcript.** On an appeal by the short form, if the appellant's abstract of the record, in the opinion of the respondent, is not substantially full and complete and fails to properly state the evidence, the latter may file an additional abstract, which, if not controverted by appellant, will be accepted as true. But if objected to by appellant in writing, the court will order the circuit clerk to send up the transcript, from which it will ascertain which is correct. The respondent will not be permitted to omit that course and file in the appellate court the transcript of the trial and refer the court to it to ascertain the evidence. In such case the abstract as presented by the appellant will be accepted as correct.

Appeal from Daviess Circuit Court.—*Hon. Arch B. Davis,* Judge.

REVERSED.

*John C. Leopard* for appellant.

(1) A wife is not entitled to relief in an action against her husband for maintenance, when she has

left him without his consent or fault, and under circumstances which do not amount to an abandonment by him. Droege v. Droege, 52 Mo. App. 84. (2) A wife is bound to follow the fortunes of the husband and to live where he lives and in the style and manner which he may adopt, and to justify an abandonment of the husband, by the wife, his conduct toward her must have been such as would entitle her to a divorce. Droege v. Droege, 52 Mo. App. 84; Droege v. Droege, 55 Mo. App. 481; Owen v. Owen, 48 Mo. App. 213. (3) Respondent is bound by the statement in her petition that defendant had furnished half of the food that was eaten and all evidence produced by plaintiff to the effect that defendant, during all the time she lived with him, had furnished practically nothing in the way of food, should be disregarded. She is bound by the admission. Pike v. Martindale, 91 Mo. 286.

*Dudley & Selby* for respondent.

(1) While it is true that in equity cases, the appellate court has jurisdiction to review the facts as well as the law, the usual practice is to defer largely to the finding of the chancellor when the evidence is very conflicting. The reason for this deference rule is because of the superior advantages possessed by the chancellor for weighing the evidence and judging the credibility of the witnesses, and this is more especially true when, as in this case, the witnesses here testified orally. Wyrick v. Wyrick, 162 Mo. App. 732; Foster v. Williams, 144 Mo. App. 227; Danforth v. Foster, 158 Mo. App. 94; Rood v. Mining Co., 157 Mo. App. 410; Mining Co. v. Coyne, 164 Mo. App. 507. (2) Where defendant's conduct is such as to render plaintiff's condition intolerable, or unbearable, she can leave him and maintain her suit for separate maintenance. McGrady v. McGrady, 48 Mo. App. 668; Kurz v. Kurz, 119 Mo. App. 53; Palster v. Palster, 145 Mo,

App. 606; Lindenschmidt v. Lindenschmidt, 29 Mo. App. 295. (3) There is nothing in the statute that requires that there shall be the same particularity of allegation in actions of this character, as in actions for divorce and a defendant would certainly know that where a wife seeks to justify her leaving him, all his conduct toward her and his treatment of her would be brought in issue and where she says in her petition —among other charges therein—''and in addition to being thus deprived, she was constantly upbraided and quarreled at and found fault with by the defendant, etc.,'' it ought to be broad enough to cover her charge that he constantly threw up to her his taunt that she had signed his name to the note at the Farmers Exchange Bank, without his authority. Sec. 8295, R. S. 1909; Munchow v. Munchow, 96 Mo. 553.

ELLISON, J.—Plaintiff is the wife of defendant and brought this action against him for maintenance. She obtained an allowance in the trial court for ten dollars per month, and defendant appealed.

Plaintiff alleges that she left defendant's home for the reason that he mistreated and failed to support her. They were married in 1898 and lived together until she left him in 1909. Each had been married before and each had grown children by their former marriages. These children had married and at the time of separation were living to themselves. Each had property when married, though in an unfortunate move to Texas each lost most of it, though defendant kept his farm (a fairly good one) of about one hundred acres, in Daviess county. Plaintiff remained in Texas for a considerable time after defendant returned to this State. On her return they lived together on the farm, and with the exception of complaints on plaintiff's part of the disrepair and discomforts of the house and of slowness on defendant's part to give her proper money for personal expenses, seemed to

prosper. She owned and kept cows and chickens, rather as her separate property. Plaintiff testified that defendant did not contribute as he should towards clothing for her, though she seldom asked him, and that he complained and "fussed" about the feed for her chickens and pasture for her cows. Plaintiff no doubt was industrious. After she returned from Texas she raised turkeys, chickens, pigs and calves, as well as berries and vegetables, and netted about five hundred dollars, which she had at interest. She bought a buggy and used his horse for visits and her comfort. She made a visit to Salt Lake City, and several visits to her married daughter in Nebraska, though she paid for these from her earnings.

There was testimony by plaintiff and by some persons who had visited them, that the house was uncomfortable in the winter. She said the roof leaked, but that defendant had a new one put on. In the course of her testimony she stated that they were buying some stock—that she put in twenty-five dollars and defendant told her "to go to the bank and get the money and tell the banker to sign his name and the banker told me to sign his name and I did so and got the money." This note was for $185. Defendant himself got $150, signing his own name, making $335. She then stated that afterwards defendant accused her of forging his name and "said he had not given her authority to sign it."

Finally "he swore he wouldn't furnish feed for my chickens any longer . . . and I said if I can't even have feed for my chickens there is not much in it for me, and if I have to sell them I will get out while I have the money to get out with. . . . I sold my stock and a greater part of my household goods, took some with me. I could not live with him now, even if he would support and care for me as I think he should, because I value my soul; I value my hereafter. I don't think anybody could live with any of them and

live a Christian life. I did think I could forgive and still live with him, if he promised to support me, until he accused me of things I never did'' (signing his name to the note).

She further testified that after leaving defendant she "went to her daughter's home in Nebraska and stayed two years, then came back, went to Jameson and Gallatin and visited old friends and then went to my daughter's at New Hampton, where I have been most of the time since." She further testified that she had a talk with defendant since this action was begun, saying: "He told me one of the neighbors was poisoning their chickens. I told him I wouldn't go out there on the farm and live in all the fuss, for all they had, if it was just deeded to me. He said he would buy a house in Jameson for us to live in; he told me where, and I said I would rather live on the other side of town where there were walks, so I could go to church. I told him he must furnish the house, that I had sold off all my household goods. I said you never did clothe or give me any money, I would have to have spending money to clothe myself. He said he always gave me one-half of everything he had and I told him some one else would have to settle it." And in this connection we may say that a witness for defendant testified that plaintiff told him while at his house at about the time this action was brought, that she would live with defendant if he would buy property in town and move in where they could live easier.

Defendant for himself testified in denial of any mistreatment of plaintiff. Said he considered the house comfortable. That he gave her money many times. That she had all the money from sale of produce and chickens, besides the money from her own cows, calves and hogs, and that she had much more money than he had. He told her of the provisions of his will for her, and for the purpose of showing his

considerate feeling for her the will was introduced, showing liberal provision in her behalf, considering his means.

A letter to plaintiff, said to be from one cf defendant's sons, married and living to himself, was introduced in evidence over defendant's objection. There was no showing that defendant knew of the letter, or that he approved of its contents and it ought not to have been considered. But regardless of that error, we think the judgment should have been for defendant on the whole case. The fact, standing alone, that plaintiff left defendant's abode, will not deprive her of her statutory action for maintenance. If the husband's treatment of the wife is such as to make her condition intolerable; if it is such as would afford her ground for an action for divorce, she may quit their residence and bring her action for maintenance. [McGrady v. McGrady, 48 Mo. App. 668; Droege v. Droege, 52 Mo. App. 84; Polster v. Polster, 145 Mo. App. 606; Wyrick v. Wyrick, 162 Mo. App. 723, 735.]

But we think the plaintiff's situation was not such as to afford her just ground for leaving the home and demanding separate support. The trouble between them was largely trivial. We do not find defendant to be responsible for much of her discontent. Their loss of property was no more chargeable to him than to her. It was a misfortune without blame for either. His feeling for her, as is evidenced by the will, was not unkind, and we are not persuaded that she suffered for the plain comforts of life, which is all she could ask in their situation. It appears from her own testimony that she would have been willing to resume her abode with him if he would move to town—that is, to a particular part of town. More than that, it seems that defendant's failure to give her money for clothing was not the reason of her refusal to continue to live with him. The immediate cause, as she states it, was his refusal further to feed her chickens. And her refusal

to forgive and still live with him was because of his accusing her "of things I never did," referring to the accusation of forging his name to the note for $185. It does not appear, certainly, that defendant used the word "forgery." It was true that plaintiff had signed his name to the note, as shown above, at the request of the banker and without authority from defendant. She no doubt did it innocently enough, and it is probable whatever defendant said about it was to remind her that he had not authorized her to do it.

But plaintiff claims that defendant's abstract of the evidence upon which we have depended is not full and, as the case has been appealed by the short method, she has had the full transcript sent to us and we are asked to read it for a better understanding of the facts. We cannot do that. It is not contemplated by the statute or rule 15 of this court that we should. The statute (Sec. 2048, R. S. 1909) provides that if a respondent is dissatisfied with the abstract presented by an appellant, he shall file an additional abstract on his part, and if the appellant shall not concur in it, he shall specify in writing his objections. An issue is thus made and the court will make an order requiring the circuit clerk to send a certified transcript. Instead of pursuing this course, plaintiff filed a "suggestion of diminution of the record," and obtained an order for a full transcript to be sent to this court. The suggestion alleges that defendant's abstract "fails to include all the testimony of the witnesses, and also fails to include all the documentary evidence in the case; that it assumes to include the substance of the oral testimony, but such abstract is only partial and not sufficient for a full and fair consideration of the case on its merits."

An appellant's dereliction may be of such character as upon proper motion and showing in support thereof, the court will dismiss his appeal. Or, it may appear to be of the nature now insisted upon by plain-

tiff, in which case the respondent should file an abstract of the parts omitted by the appellant, which, if not controverted by the latter, as pointed out in the statute, will be accepted by the court. In no instance is it proper to evade the statute and rules by referring the court to the transcript *en masse*.

Concluding the finding should have been for defendant, the judgment is reversed. All concur.