STATE OF IOWA, Appellee, v. WILLIAM F. HILL, Appellant.

Husband and wife: ABANDONMENT: EVIDENCE: It is not permissible for a husband, when prosecuted for deserting his wife and leaving her in a destitute condition, to show that he believed her to be unchaste at the time of their first marriage, or at the time of their re-marriage after she had obtained a divorce, unless he goes further and shows that her unchastity resulted in her pregnancy at the time of the second marriage.

Same: FAILURE TO SUPPORT THE WIFE: EVIDENCE. In an action against the husband for leaving his wife in a destitute condition, evidence that the husband had credit with merchants from whom his wife bought supplies, until he notified them to sell her no more; that he had rented a farm, had some farm implements and money to pay the freight on the same to a distant county; that he had some claim on land in another state, and that shortly before their marriage he had transferred practically all of his personal property to his sons by another marriage, was sufficient to show that support was not refused because of his inability to furnish the same, and there was no error in refusing to submit that question to the jury.

Same: SECONDARY EVIDENCE. Where it appeared that a witness had lost or mislaid a letter received by him, and was unable to produce the same, his testimony concerning its contents was admissible.

Same: DESERTION: BURDEN OF PROOF: INSTRUCTION. On the prosecution of a husband for wilfully neglecting to provide for his wife, an instruction that the state has the burden, not only of showing the neglect and that the wife was destitute at the time, but that the state must also show that he had no good cause or excuse for refusing to support her, the term good cause as here used meaning substantial cause, such as would justify an ordinary, self-respecting man in refusing to support his wife, was more favorable to the defendant than he was entitled to and therefore he could not complain of the same.

Same: DUTY OF HUSBAND TO SUPPORT HIS WIFE. It is the duty of a husband to support his wife, even though she may have a separate estate, or may have been unchaste before the marriage, and if she

leaves him without fault on her part this duty still continues; but if she leaves him through fault of her own, such as would ordinarily entitle him to a divorce, or under a separation agreement absolving him from further support, his duty to support ends. Ordinarily this duty to support contemplates that he shall provide it at his own home.

**Same: DESERTION: GOOD CAUSE: INSTRUCTION.** Where there was no
6 evidence of good cause justifying the defendant in refusing to support his wife, failure of the court to define good cause in the instructions was not prejudicial to the defendant.

**Same: DESERTION: BURDEN OF PROOF: EVIDENCE: INSTRUCTION.**
7 Under the statute providing that proof of desertion of a wife in destitute circumstances, or failure to furnish necessary support, shall be *prima facie* evidence that the desertion was willfull, a husband charged with deserting his wife has the burden of showing inability to support her; and where there was evidence tending to show that the husband was able to support his wife, an instruction that the fact that he neglected without good cause to support her established the wilfullness of his act, was not erroneous because making no reference to his ability to support her.

*Appeal from Dallas District Court.*—Hon. LORIN N. HAYES, Judge.

TUESDAY, JULY 1, 1913.

DEFENDANT was indicted for wife desertion, and upon trial was convicted and sentenced to the penitentiary. He appeals.—*Affirmed.*

*White & Clarke,* and *H. G. Giddings,* for appellant.

*George Cosson,* Attorney General, and *John Fletcher,* Assistant Attorney General, for the State.

DEEMER, J.—Defendant was indicted for a violation of section 4775-a of the Code Supplement, which section reads as follows:

Every person who shall, without good cause, willfully neglect or refuse to maintain or provide for his wife, she being in a destitute condition, or who shall, without good cause, abandon his or her legitimate or legally adopted child or children under the age of sixteen years, leaving such child or children in a destitute condition, or shall, without good cause, willfully neglect or refuse to provide for such child or children they being in a destitute condition, shall be deemed guilty of desertion, and, upon conviction, shall be punished by imprisonment in the penitentiary for not more than one year, or by imprisonment in the county jail for not more than six months.

Section 4775-e of the same supplement reads as follows:

Proof of the desertion of wife, child or children in destitute or necessitous circumstances or of neglect to furnish such wife, child or children necessary and proper food, clothing or shelter, shall be *prima facie* evidence that such desertion or neglect was willful.

Defendant is a man of some years, having been three times married. By his first wife he had two sons, each of whom was of age at the time the indictment was returned. He was twice married to the prosecuting witness, Cecil Hill, the first time in August of the year 1909, and the second in January of the year 1912. He lived with his wife but a few months after the second marriage, and deserted and refused to support her some time in the early part of the month of March. Prior to that time he had lived in Dallas county, but about the 4th of March he shipped his property to and took up his residence in Fremont county. He failed to take his wife with him for the ostensible reason that he had not obtained, and was not sure of getting, a residence at the place where he was going, but promised that, as soon as he obtained a suitable place, he would send for her. Before going to Fremont county, defendant made arrangements with some merchants at Redfield, in Dallas county, where he was then living, to furnish groceries, provisions, and meat to his wife and advised the wife that he had done so. Pursuant to this

arrangement, the wife purchased a small bill of goods from one or both of them, but defendant soon had a change of heart and while on his way to his new home, by train, he wrote the following letter to his wife:

Mch. 4, 1912

Well Cecil

Having Just now Learned the Game you Have Been trying to work I Just Want to say that you and I are Done I told you last week I would Leave you and you know Why. Now the thing for you to Do is Not to make any Big Holler But Just say that you will never come to Me and if you go about it and Sue for Divorce on the Grounds of Non Support I won't resist But if you ask for anything Different I will fight you. You know what the trouble is and Don't Compel me to go into Details and I want to say again that We are Done Now. I Don't Know if you Know it or not, But I Deeded my land to Archie & Otis before we were married and all the Live Stock belonged to them before and Does yet. I was satisfied you Were trying Stick me again and I was not mistaken. Now this is all I will ever write to you. I am sorry that I Have made the same mistake twice. I will send you Back all of your Stuff.

Resp.                                     W. F. Hill.     (over)

I am Disgusted with you Now more than ever and I would rather leave Iowa for all time to come than to Be with such a woman.

This letter was postmarked at Manilla, March 5th, 8 p. m., and was received at Redfield at 12 m. of the same day. On the day he reached Hamburg, which was March 5th, he wrote to one of the merchants, with whom he had arranged to furnish his wife goods, the following letter:

Hamburg Ia Mch. 5—1912.

C. A. Diddy—Dear Claud:

Please tell the Business men of Redfield to not sell any goods on My Acct without my Order. I will make good to Date But not anything after. You will know all Latter. I Hope this not asking to much.

Resp.                                     W. F. Hill.

And to the other merchant, with whom he had made similar arrangements, he sent substantially the same letter.

On March 14th he wrote his then wife the following:

                                  Hamburg Ia Mch 14—1912.
Well Cecil

So long as we Have Permitted ourselves to get into this Predicament the Second time I think the quicker we get straightened out the Better. Now if you will begin Divorce Proceedings up there all right if not I will begin Here in Missouri. Since I Have found out the straight of it there would only be a waste of time for us to try to do anything But to get a Divorce. I am sorry that this Has Happened the Second time. I will go to California Just as Soon as we get fixed up and I will Say right Here Redfield Has Seen me for the last time if I have my Way about it. I am Disgusted with the Deal. Send me the Balance of my things and I will send you yours. Let me know what you think about you getting a Divorce.

Resp.                                     W. F. H.

The first marriage between defendant and the prosecuting witness was dissolved by decree of court; the action having been commenced by the husband, but the decree being rendered upon the wife's cross-petition. The divorce was granted but a few weeks after the marriage, and on May 5, 1910, a child was born to the divorced wife. Shortly after this first divorce was obtained, defendant went to South Dakota, where he took up a claim of some kind and remained until about August, 1911, when he returned temporarily to Redfield, remaining there until about the 8th or 9th of October, when he returned to Dakota. During this interval he met and had some talk with his former wife, the nature of which is somewhat in dispute. He remained in Dakota until about the 21st day of December, when he again returned to Redfield, but he did not see his former wife at that time. Again he returned to Redfield about January 10, 1912. He met his former wife, either on that or the next day, and on the 11th of that month they went to Adel together, and on that evening went on to

Jefferson, where they were remarried. In a few days they returned to Redfield and there lived together at the home of the wife's mother for about two months. And then it was that defendant left the prosecuting witness and removed to Fremont county. There he had rented a farm and the wife supposed she was to be taken to it or to another house as soon as it could be found.

Defendant sought to show the reason for the separation after the first marriage, but was not permitted to do so. This reason, as we gather from the record, was that defendant thought she was unchaste at the time he married her and perhaps believed that she was *enceinte* by another man. It is apparent, however, that this testimony was properly excluded for two reasons: First, the wife obtained the divorce and not the husband, and, second, all prior offenses were condoned, if there were any, by the second marriage, except, perhaps, the fact that some of them may have resulted in her being pregnant by another man at the time of the second marriage. This latter defendant attempted to show, or at least he offered testimony tending to show, that he was suspicious of such being the case. As already indicated, defendant took the woman ''for better or for worse'' at the time of the second marriage, save as already indicated, and it was quite immaterial for defendant to show that prior to the second marriage the prosecuting witness claimed to have reformed and to have been chaste since the dissolution of the first marriage. In other words, the woman's unchastity either before the first or the second marriage or any promises made by her during the interval between the two marriages were quite immaterial to any issue in the case, unless the defendant was prepared to go further and show that such unchastity had resulted in pregnancy, which condition existed at the time of the second marriage.

The record shows that a child was born to prosecutrix on October 4, 1912, and that defendant, shortly after the second

1. HUSBAND AND WIFE: abandonment: evidence.

marriage, became suspicious that the child was not his, but he has produced no competent testimony to show that he is not the father of the child. These propositions of law are well settled and no authorities need be cited in their support. The alleged errors in the trial court rulings on the admission and rejection of testimony are all met by these suggestions and are without merit.

II.    Defendant introduced some testimony tending to show that he was without property and physically unable to do a man's work. But, on the other hand, it appears that he had credit with some of the merchants at Redfield, paid his bills to them, and that he had rented a farm in Fremont county. He also has some farming implements and enough money to pay the freight on his goods. He also had some sort of a claim upon land in South Dakota, although it is claimed this was of no value. Moreover, he introduced testimony tending to show that he had disposed of practically all his available property to the sons of his first marriage shortly before entering into the third. In view of his arrangement with the Redfield merchants and the countermand thereof, the fact that he seems to have had credit with these merchants, because they sold goods to the wife on his credit until notified to desist, is sufficient proof that support was not refused because of defendant's inability to provide, and there was no error in failing to submit that matter to the jury.

2. SAME: failure to support the wife: evidence:

III.    The fact that the wife was left in a destitute condition at Redfield after the countermand of the orders to sell her goods is abundantly established.

IV.    One of the merchants, to whom defendant wrote a letter countermanding his direction to furnish the wife goods, testified to the contents of the letter, and this was objected to. As the letter was shown to have been either mislaid or lost, and the witness was unable to produce it, there was no error here.

3. SAME: secondary evidence.

V.    Instructions 7 and 9 are complained of;

(7) The burden is upon the state to show not only that the defendant willfully neglected or refused to maintain or provide for his wife, and that she was at the time in a destitute condition; but it is also incumbent upon the state to show that the defendant has no good cause or excuse for refusing or neglecting to support his wife, if the evidence shows that he did so neglect or refuse to support her. Good cause as used in these instructions does not mean some slight misunderstanding, petty whim, or quarrel, but it means a substantial cause such as that you as jurors can say under such conditions a man of ordinary self-respect and pride would be justified in refusing to support his wife while such condition remained; and, if the proof has failed to establish the fact beyond a reasonable doubt that no such reasonable cause for defendant's neglect or failure to support and provide for his wife, Cecil Hill, existed, then the state would not be entitled to a conviction at your hands, and you should acquit the defendant. . . .

4. SAME: desertion: burden of proof: instruction.

(9) The term 'destitute condition,' as used in these instructions, means that she (the said Cecil Hill, wife of William F. Hill) was left in a condition of great need; a state of extreme poverty, or was without money, property, or credit upon which she could rely for her support. If you shall find from the proof introduced upon the trial of this case beyond a reasonable doubt as herein defined that the defendant in Dallas county, Iowa, within the time specified in these instructions, deserted Cecil Hill, as that term is herein defined to you, she then being his wife, and then being in a destitute or necessitous circumstance, and that he neglected to furnish such wife necessary and proper food, clothing, or shelter, without good cause, then such facts, if they be facts, would establish the willfulness of such act within the meaning of the statute, and you are to determine whether these facts have been established beyond a reasonable doubt from the evidence.

The first of these was more favorable to defendant than he was entitled to. *York v. Ferner,* 59 Iowa, 487; *State v. Stout,* 139 Iowa, 557. From the latter case we quote the following:

It is argued for the state that defendant did not abandon his wife on this ground (adultery), for it appeared from

the testimony of the witness who claims to have had the illicit relation with defendant's wife, and who testifies that he went away with defendant at the time when defendant left his home with the intention of not returning, that he did not communicate to defendant the improper relation which he had sustained with the wife until they had started on this trip together. But, in the first place, the question is not whether there was testimony which in the opinion of the jury justified the defendant in believing his wife to be unfaithful, but whether she was in fact unfaithful. *The statute refers to good cause, and not to reasonable belief as to existence of good cause.* The husband may have a conviction as to the unfaithfulness of his wife without being able to prove a reasonable basis for such conviction, and, if he abandons her and the unfaithfulness is in fact established, we think his 'good cause' is made out. (Italics are ours)

There is no law which compels husband and wife to live together, but it is the husband's duty to support and provide for his wife, and failure to do so is now made an offense under the statute. So long as they live together, the husband is doubtless bound, if able, to support her. If he leaves her without her fault, this duty still continues. If the separation is through her fault, then he need not maintain or provide for her. As a rule, such fault must be of a character which would justify him in obtaining a divorce. Doubtless they may agree upon a separation and make such conditions therein as to support as are fair and reasonable, and thus absolve the husband of any further duty as to support. This duty of support is said to be a primary one and to exist although the wife has a separate estate and even though she may have been unchaste before the marriage. *State v. Ransell*, 41 Conn. 433.

5. SAME: duty of husband to support his wife.

But a husband is not liable for the support of a wife who, without just cause, refuses to live with him, even though her refusal has not been for the time required by statute to constitute desertion. *Isaacs v. Isaacs*, 71 Neb. 537 (99 N. W. 268). In other words, the husband may ordinarily say that the support shall be furnished in his own house; and, if

through no fault of the husband his wife leaves him, she is not entitled to support. *Spitler v. Spitler,* 108 Ill. 120; *Oinson v. Heritage,* 45 Ind. 73 (15 Am. Rep. 258); *Harttmann v. Tegart,* 12 Kan. 177. And, if the wife is guilty of such conduct as entitles a husband to a divorce, he may leave her and refuse to support without being subject to the penalty imposed by the statute quoted.

The instruction given by the trial court was much broader than this, but the defendant has no cause for complaint. His position here is that unchastity before the first marriage and immorality before the second, coupled with representations denying the fact, may constitute good cause for failure to support, and he relies upon *State v. Dvoracek,* 140 Iowa, 266. That case does not go to the extent claimed; nor does it, in any manner, run counter to the view herein expressed. This an examination will disclose. It is true that the trial court gave the jury a much wider range, but of this defendant cannot complain.

Again, it is contended that the court should have instructed as to what would be good cause. While this would doubtless have been the safer rule, and is to be preferred, the failure of the trial court to do so, in the absence of any testimony of facts showing good cause, was non-prejudicial.

6. SAME: description: good cause: instruction.

The ninth instruction is challenged because it omits a reference to defendant's ability to furnish the support. Now while there is some testimony tending to show that he had no visible property, he did not himself say that he could not furnish the support, although he was a witness on his own behalf. On the contrary, he had credit and for a time used it for his wife's support. The merchants were willing to trust him; and, while he may have been unable, on account of physical inability, to do very heavy work, there is absolutely no testimony tending to show that he was unable to do so. In view of the statute quoted in the first division of this opinion, the burden was upon defendant to show inability to furnish the

support, and this he failed to do. There was no error in view of the *prima facie* case made by the showing for the state in giving the ninth instruction. The trial court seemed to be somewhat at a loss to know what would constitute sufficient cause, so he submitted the matter to a jury. The instruction, however, was most favorable to the defendant, and no prejudice resulted to him from failure to state just what would or would not constitute sufficient cause.

No prejudicial error appears, and the judgment must be, and it is, *Affirmed*.