MELVIN HUPP, RESPONDENT, v. BUELAH HUPP, APPELLANT, LARKIN W. WARREN AND ROXIE WARREN, Intervenors.—193 S. W. (2d) 215.

Springfield Court of Appeals. May 3, 1946.

*Eugene M. Munger* for appellant.

*J. Grant Frye* and *Gerald B. Rowan* for intervenors.

*Harry S. Bock* for respondent.

VANDEVENTER, J.—On March 29, 1945, Melvin Hupp filed a petition for divorce in the circuit court of Butler County, Missouri. On April 7, his wife, Beulah Hupp, filed her answer and cross-bill. We will refer to them as plaintiff and defendant. On June 15, the defendant withdrew her cross-bill but not her answer, which was in the nature of a general denial, whereupon the case went to trial. Plaintiff testified that he married defendant (whose maiden name was Buelah Beatrice Warren), October 8, 1938 at Benton, Missouri, and lived with her approximately four months. They were living in a one-room house which had been a garage remodeled for living purposes. When they married, he was a farmer, a fact well known to the defendant. After the marriage, they lived in Chaffee, he doing odd jobs of work and receiving therefor approximately $1 per day. By January 24, 1939, he had made arrangements to move to his father's farm where he would receive employment and also be furnished a house in which to live. His work would have been driving a tractor and team, clearing ground and general farm duties. He told his wife about this arrangement and she refused to go to the farm. He told her he could not make a living in town, there wasn't enough work and that he must go to a farm where he could obtain employment. She refused to go with him and asked that she be taken to her mother's home. Plaintiff refused to live with her mother and father, so he left defendant at her mother's home and obtained employment, not on his father's farm but on a farm in Stoddard County. He lived there about a year and a half before going back to his father's farm in September, 1940. On January 8, 1942, he was inducted into the Army, first being stationed in Texas, then transferred to the States of Washington, Nevada, California, New Mexico, Virginia, Connecticut and on July 17, 1942, was sent to England. From there he went to Africa, then to Italy and July 8, 1944, returned to the United States. At the time of the trial he was still in the Armed forces and located in Tennessee. Before he was inducted into the Army, he had tried several times to get his wife to come and live with him, but she positively refused to do so. In December, 1944, while stationed in Nashville, Tennessee, he received a letter from his wife asking him to give her a divorce. He testified that he had given his wife no reason for refusing to live with him and that he had always conducted himself properly;

that he had had a home ready for her until he was inducted in the Army but she refused to come to it.

To this marriage was born one child, August 18, 1939—a boy named Melvin Clifford Hupp, and plaintiff asked for his care and custody. He stated that while he was in the Army, if he were given custody of it, he would provide a good home for it with his parents. He further testified that he had never cohabited with his wife after the night he took her to her mother's in January, 1939, and that he had seen her only one time, when she passed his father's house in a truck with their child. There was introduced in evidence certified copies of two birth certificates issued by the State Board of Health, the first showing that on June 12, 1942, there was born to Mrs. Melvin Hupp, whose maiden name was Buelah B. Warren and whose age was 22 years, a child named Beatrice Imogene Hupp. Mrs. Hupp's address was given as Chaffee, Missouri. Melvin Hupp was named as its father; the certificate stated that the mother had one child living at the time and that the attending physician was Dr. A. L. Fuerth. The child was born at St. Francis Hospital in Cape Girardeau. The other birth certificate stated that in the St. Francis Hospital at Cape Girardeau, Mrs. Buelah B. (Warren) Hupp of Chaffee, Missouri, had given birth to another child on April 30, 1944, and stated that the mother was 24 years old, was born at Bell City, Missouri, usual occupation was housewife and the mailing address for registration notice was Mrs. Buelah Beatrice Hupp, Chaffee, Missouri. The attending physician was also Dr. A. L. Fuerth.

The evidence further showed that Clyde Stubbs, a funeral director who lived in Chaffee, Missouri, had known defendant for about five years; that he conducted the funerals of two children by the name of Hupp in the years 1942 and 1944. The parents of the defendant (petitioners for modification) made arrangements for the funerals. Defendant Buelah Hupp later came to the mortuary and paid the balance due for funeral services. The first funeral was conducted June 30, 1942, the second funeral was held April 30, 1944. The court permitted the introduction of the birth certificates, and the evidence of the funerals, as bearing only upon the question of the care and custody of the child. Plaintiff, after the separation, had contributed $5.00 at one time and had at another time sent a suit of clothes to his son, but had made no other contributions.

Evidence was also offered showing the plaintiff to be a man of good moral reputation. Mrs. Elizabeth Hupp, mother of plaintiff, testified that plaintiff, when not in the Army, made his home with her and her husband. That she and her husband were able and willing to take care of the child while plaintiff was in the service. She was 54 years old and lived within a mile and a quarter of a school house. That defendant told her one time, just prior to the separation that

she would not live on a farm. Witness further testified that she and her husband owned a farm of 164 acres, for which they had contracted to give $5,500 and of which amount they had paid $3000. That they had two sons, eleven and thirteen years of age, who resided with them. Upon the close of plaintiff's testimony, attorney for defendant made an oral motion that the court dismiss plaintiff's cause of action for failure of proof. This was overruled conditionally. Defendant offered no evidence but the record shows that defendant and her mother and father, Mr. and Mrs. L. W. Warren, were present in the courtroom during the trial. The motion was then overruled unconditionally.

The decree for plaintiff, granting him a divorce and care and custody of the child, was rendered June 15. On June 25, defendant filed a motion for new trial which was set for hearing on July 2nd. Neither party appearing on that date, the motion was overruled. This ruling was set aside on July 14th. On July 31, the motion for new trial was again overruled. On July 17, Larkin W. Warren and Roxie Warren, parents of defendant, filed the following petition for modification of the decree relative to the custody of the child:

"Larkin W. Warren and Roxie Warren petition the court to modify the decree herein and give them custody of the infant child of the parties in this case for the following reasons.

"1. The petitioners herein have had the custody of said child since its birth and have nourished it and cherished and have exclusively maintained it.

"2. That the plaintiff is an unfit person to have the custody of the child and due to his military service is unable to take care of it.

"3. That it will be to the best interest of the child for the petitioners to have the custody of said child.

"4. That the petitioners are ready, willing and able to keep said child until further order of the court and give it all the advantages of life insofar as they are able."

The court refused to entertain the petition because petitioners were not parties to the law suit, that their testimony could have been offered at the trial at which they were present for whatever it was worth; that the case was now closed, judgment had been entered, motion for new trial had been filed and there was no good reason for reopening for further testimony on matters which were not in issue at that time.

The record shows the following proceedings:

"(By the Court): Now, Mr. Frye, whatever offer you wish to make into the record you may make.

"Mr. Frye: If the Court please I would like to call some witnesses on this Petition of L. W. Warren and wife and if the court will permit I will state the substance of the testimony which we would like to offer so as to have it in the record.

"The Court: You may state it into the record.

"Mr. Frye: We would call witnesses which we have here under subpoena who know about this and who have known the parties and lived in their community to show that since the birth of this child that L. W. Warren and wife have had the exclusive custody of it, exclusively maintained and nourished the child; that they have interviewed the plaintiff at various times and asked him to support it and he said he would die or something to that effect before he would give a dime for its support and that he refused absolutely to pay a penny during all those years for its care and that at this time they still have it, love it and they send it to Sunday School regularly at a good church, give his little contribution to the Sunday School and Church; that they keep it well clothed and fed and clean and neat and take care of his medical matters and his health. It is a bright child and very attached to them; and that they live with the child and it with them; that they are the grandparents of the child, the parents of the defendant; that they are willing to continue that status, give the child a fine opportunity in life; that they are people of excellent character and fine standing with a good home; that they owe no debt; that they have considerable property and that Mr. Warren has a fine income as a Trainman for the Frisco Railroad there at Chaffee. That in substance with some developments in the testimony is the testimony we are prepared to offer this morning if the court will hear us.

"The Court: Any objection you wish to state into the record at this time Mr. Bock?

"Mr. Bock: I wish to state that Mr. Frye's motion is a motion to modify the decree rendered in this court; that it does not allege any conditions or any changed conditions from the time the original decree was entered; that it is out of order for the reason that the motion for new trial was pending when this motion was filed and is still pending and it would simply be a rehash of the original case and it is offered by parties who are not parties to the original suit.

"The Court: Let the record show that the objection is sustained and the Petition denied.

"Mr. Frye: Note our exception."

The defendant has appealed from the court's action in the divorce case and while he lists five assignments of error and has five "Points and Authorities" in his brief, each, in substance, alleges insufficiency of the evidence. The petitioners, Mr. and Mrs. Warren, appeal from the action of the court in dismissing their petition for modification, and refusing to hear testimony thereon.

First, as to defendant's appeal. One of the grounds for divorce is that a spouse absent himself or herself without a reasonable cause for the space of one year (Section 1514, Mo. R. S. Anno. 1939). This absence must be from the family domicile. The husband has the

right to select the family domicile and it is the wife's duty to accompany him there and if she refuses to do so, without just excuse, she is guilty of desertion. [Parsons v. Albertson (Mo. App,), 31 S. W. (2d) 211; Schuman v. Schuman, 93 Mo. App. 99; Deschodt v. Deschodt, 59 Mo. App. 102; Messenger v. Messenger, 56 Mo. 329, 27 Corpus Juris Secundum, p. 564, sec. 36; Nicholson v. Nicholson, 264 S. W. 82, 214 Mo. App. 570; 17 American Jurisprudence, p. 205, sec. 106; Droege v. Droege, 52 Mo. App. 84.]

The facts in this case show that plaintiff was a farmer at the time of the marriage, a fact well known to the defendant; that her only reason for leaving defendant and going to her parents was because she did not like to live in the country on a farm. The record is barren of any other reason. It is asserted in the brief of appellant that plaintiff was not the innocent and injured party because he did not support defendant after the separation. The law is well settled in this State that if a wife deserts her husband, without just cause, she cannot complain that he does not support her. [Webster v. Boyle-Pryor Construction Co. (Mo. App.), 144 S. W. (2d) 828; Grant v. Grant, 157 S. W. 673, 171 Mo. App. 317; Brady v. Brady (Mo. App.), 71 S. W. (2d) 42, 253 S. W. 172; Hess v. Hess, 113 S. W. (2d) 139, 232 Mo. App. 825; Rutledge v. Rutledge, 119 S. W. 489, 177 Mo. App. 469; Schulze v. Schulze, 251 S. W. 117, 212 Mo. App. 75.]

It is the duty of a husband to support his wife at the matrimonial domicile while they are living together as husband and wife. He is not required to support her away from the home even though such home may be disagreeable to her, unless he has turned her out of doors, or his treatment of her justified her leaving the home. [41 Corpus Juris Secundum, Section 15, p. 409; State v. Hill, 161 Iowa, 279, 142 N. W. 231; Merriam v. Merriam, 75 Wash. 389, 134 Pac. 1058; Barefoot v. Barefoot, 83 N. J. Equity 685, 93 Atl. 192; Purnell v. Purnell (N. J.), 70 Atl. 187; Randall v. Randall, 37 Mich. 563.]

From the foregoing authorities, it will be seen that the failure of plaintiff to support defendant after the separation was no defense to his plea of desertion.

It is also argued in appellant's brief that plaintiff's failure to support his child, which was born several months after the separation, was such conduct on his part as would prevent him from obtaining a divorce. Whatever the plaintiff's duty may have been to the child, to support it, his failure to do so, under the circumstances of this case, does not prevent him from being the innocent and injured party in a suit for divorce against his wife. [Hess v. Hess, *supra.*] Corroboration of a prevailing party's testimony in a divorce suit is not necessarily a prerequisite to a decision in his favor. [Ridge v. Ridge, 165 S. W. (2d) 294; Stevens v. Stevens, 158 S. W. (2d) 238; White v. White, 180 S. W. (2d) 229.] It is largely a question within the

sound discretion of the trial court. The court found him to be entitled to a divorce, that he was the innocent and injured party and we think the findings of the chancellor were correct.

As to the motion to modify the decree relative to the care and custody of the child. This petition to modify was filed on July 17, while the motion for new trial was pending. The decree was entered on the 15th day of June. There is no statutory or other authority in this State, that we have been able to find, authorizing a third party to a divorce suit to file a petition for modification of the court's judgment relative to the care and custody of children. Appellant has cited none. In other jurisdictions it has been held that there is no such authority. [Zachary v. Zachary, 63 Pac. (2d) 1080, 155 Ore. 346; Girtman v. Girtman, 11 S. W. (2d) 792, 191 Ga. 173.]

Section 9638, Mo. R. S. Anno. 1939, provides a method whereby any person knowing of a child that is ill treated or whose health or morals are endangered by cruel treatment, neglect, immorality or gross misconduct of its parents or guardians, may file a verified complaint, stating such facts with the Juvenile Court of the child's county and have the matter inquired into in a proper and orderly way. If the court finds the facts alleged to be true, it may make an order committing the child to the guardianship of the State Commission where it shall remain until that institution provides a proper permanent home for it or until otherwise ordered by the Juvenile Court. [Secs. 9641, 9642.]

We believe the foregoing is the method that should have been followed by the petitioners and that there is no legal authority for their filing a petition to modify the decree.

There is another reason why their petition should have been denied. It did not raise any point that had not been heard and decided in the divorce case. No new facts were pleaded that had not already been considered by the court, nor do they assert that there has been a change in conditions since the trial of the divorce suit. [See Armstrong v. Armstrong (Mo. App.), 185 S. W. (2d) 845.] The petition consists principally of conclusions. The petitioners and their daughter, the defendant, had been present during the trial of the divorce suit and had offered no testimony. Yet the plaintiff's evidence showed that since the separation of the parties in January, 1939, the defendant had resided with the petitioners; that her first child was born there, that subsequently she gave birth to two illegitimate children in 1942 and 1944 respectively; that petitioners made arrangements for the funerals of these two children. They must have known that the defendant had been guilty of the grossest, immoral conduct while her soldier husband was in the armed forces. Should they be permitted to sit by, to wait until a judgment was rendered against their daughter, and then immediately apply, without any

972

change in conditions, for a reopening of the decree as far as the care and custody of the child was concerned? We do not think so. They had an opportunity to be heard on the questions raised in their petition but preferred to take their chances on a favorable decision. The choice was theirs. Neither does the statement of counsel as to what they desired to prove under the petition change the situation.

As against a parent, whose reputation is good and who can furnish a suitable home for his child, the claims of the grandparents should be unavailing, regardless of their ability or willingness to support and maintain their grandchild. [Armstrong v. Armstrong, *supra*.] Under the record in this case, the trial judge was justified in denying the petition for modification and refusing to hear evidence thereon. We have carefully reviewed the cases cited by appellant and petitioners but they have no application to the facts here. The judgment of the trial court should be affirmed. It is so ordered.

*Fulbright, P. J.,* and *Blair, J.,* concur.